United States Court of Appeals,

Fifth Circuit.

No. 94-60648.

UNITED STATES of America, Plaintiff-Appellee,

v.

Jimmy D. McGUIRE, Defendant-Appellant.

March 26, 1996.

Appeal from the United States District Court for the Southern District of Mississippi.

Before SMITH, WIENER and DeMOSS, Circuit Judges.

DeMOSS, Circuit Judge:

Jimmy D. McGuire, a Mississippi attorney, was convicted by jury in the Southern District of Mississippi of filing a false IRS form 8300 in violation of 26 U.S.C. § 6050I(f)(1)(B) and 26 U.S.C. § 7206(1).[1]  McGuire was sentenced to 36 months incarceration to be followed by one-year supervised release.  McGuire was also fined $50,000, ordered to pay $20,000 for cost of confinement and ordered to pay a $50 special assessment.

McGuire appeals his conviction, the district court's order denying his post-trial motions for acquittal or new trial and the sentencing order.  On appeal McGuire claims that the jury instructions were deficient, the evidence was insufficient and that he was unduly prejudiced by the prosecutors' improper remarks in closing argument.  During the pendency of this appeal, the Supreme Court

---

[1]Title 26 U.S.C. § 6050I requires that cash receipts of more than $10,000 per transaction (or set of related transactions) be reported.  Section 6050I(f)(1)(B) provides in relevant part:

> "No person shall for the purpose of evading the return requirements of this section ... (B) cause or attempt to cause a trade or business to file a return required under this section that contains a material omission or misstatement of fact...."

The criminal penalties applicable for violation of § 6050I(f)(1) are the same as those provided for failing to file or filing a false return.  26 U.S.C. § 6050I(f)(2).

Title 26 U.S.C. § 7206(1) provides that any person who "willfully makes and subscribes any return, statement, or other document, which contains or is verified by a written declaration that it is made under the penalties of perjury, and which he does not believe to be true and correct as to every material matter" can be fined up to $100,000 and sentenced to three years or both.

decided *United States v. Gaudin,* --- U.S. ----, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). We are persuaded that *Gaudin* renders the jury instructions given in this case reversible error. McGuire's conviction will be reversed and the case remanded for possible retrial.

## BACKGROUND

Jimmy D. McGuire is an attorney licensed in the state of Mississippi. In February 1982, McGuire had a substantial criminal defense practice representing individuals charged with drug offenses, as well as other matters. Around that time, the IRS received information from a number of sources suggesting that McGuire routinely received and failed to report large amounts of cash in his practice, which he then laundered in various transactions for the purchase of expensive automobiles and real estate.[2] As a result, McGuire became the target of an undercover "sting" operation. Three government agents were involved in the sting that resulted in McGuire's conviction: (1) agent Narciso Hernandez, posing as Hector Flores (Flores); (2) agent Henry Montes, posing as Hector Martinez (Martinez); and (3) agent David Barrientos, posing as David Bolivar (Bolivar).[3]

Flores contacted McGuire by telephone on February 5, 1992, with the story that $280,000 had been seized from Flores' car during a traffic stop by the Mississippi Highway Patrol. Flores requested McGuire's assistance in recovering the money and avoiding forfeiture. Later that day Flores and another agent, Martinez, met with McGuire in his Gulfport office. During the meeting, Flores explained that it would be hard to come up with a legitimate source for the $280,000, to which McGuire responded: "You don't have to be a genius. Ah, did you win the lottery in Florida? Did you, ah—did it belong to someone else?" Flores informed McGuire that he was a cocaine dealer, stating "I've just been selling a little bit of cocaine, that's about it." McGuire suggested that Flores could more successfully evade law enforcement by flying or by driving Highway 90 and Highway 26 as an alternative to Interstate 10, because "[t]hey don't patrol that area at all."

---

[2]The information generating the investigation was well-documented at trial. Several ex-clients testified that McGuire routinely required large cash payments in the tens of thousands of dollars and refused to give receipts. Other individuals offered testimony about large amounts of cash observed in McGuire's home and about large purchases made with cash.

[3]To avoid confusion, the opinion refers to the agents using their aliases.

Flores said that he had told police that the money was from a sale of floor tile, but confessed to McGuire that this was not true. Nonetheless, when Martinez asked whether it would be a good idea to have a contractor claim to have received tile, McGuire replied that it would. McGuire advised Flores and Martinez that it would back up their claim if they filed a form with the IRS reporting that they had received the $280,000 from the sale of tile, but that it would be inadvisable to file the form if the money was illegal, because filing a false form is also a crime.

Martinez explained that he had not been present at the stop and seizure, but that he had a partial interest in the $280,000. McGuire agreed to represent both Flores and Martinez in their effort to recover the money and proposed a $20,000 retainer, plus an agreement for 30% of whatever was recovered. Martinez asked whether McGuire would have to file a form with the IRS if Martinez paid McGuire the $20,000 retainer in cash. Both Flores and Martinez expressed concern about having their name appear on any forms. The three men then discussed at length different methods for evading the filing requirement established by 26 U.S.C. § 6050I.

McGuire proposed that Flores and Martinez bring in a third party, who could hand the money to McGuire. McGuire said he could then set up a dummy file for representation of that third party and, if anyone asked, McGuire could say that the arrangement for representation of Flores and Martinez was strictly on a contingent fee basis. McGuire explained, "you will be my client, but that money won't be connected to it."[4]

The next morning, February 6, Flores telephoned McGuire, explaining that he was trying to secure money for McGuire's retainer. Later that day, Flores and Martinez went back to McGuire's office, this time with a third agent who posed as David Bolivar. McGuire again agreed to represent Flores and Martinez in the forfeiture action. Flores "agreed to pay McGuire $20,000 as partial payment of the fee." Then the following exchange occurred:

> Flores: We thought about what you said yesterday. We'll just go ahead and give you the 20,000.

---

[4]McGuire also suggested keeping the initial retainer just under the statutory $10,000 amount and structuring the transaction through different banks with cashiers' checks drawn for less than $10,000.

McGuire:  Okay.

Flores:  And, then, if you need to put somebody's name or something, you can put his name on it.

McGuire:  Okay.

McGuire inquired whether Bolivar had the money, to which Flores replied, "I got it here."  McGuire admonished Flores to "[p]ut that away.  It should not come from you."  Sounding exasperated, McGuire added "I'm gonna walk out of the room for just a second, okay?"  As McGuire left, Flores directed McGuire's attention to Bolivar and said "[j]ust give it to him?"  McGuire responded by throwing up his hands and leaving the room.

When McGuire returned, Bolivar gave McGuire $20,000 in cash.  Both Bolivar and Flores requested a receipt.  Bolivar told McGuire he would say that they had a percentage fee arrangement, if anyone asked.  McGuire confirmed the arrangement and agreed that they did not have to tell anyone about the $20,000.  Flores informed McGuire that the bills were all in hundreds, and that the money was packaged one thousand dollars to a bundle.  Martinez again expressed concern about whether his name would appear on any documents, but instructed McGuire to "get what we want."

The following day, February 7, McGuire prepared IRS form 8300, reporting the receipt of $20,000 cash.  Part I of the form identified David Bolivar as the "individual from whom cash was received."  Part II, which required the identity of the "person ... on whose behalf this transaction was conducted," was left blank.  Ten days later, on February 17, McGuire filed an amended form 8300.  Part I of the amended form again listed Bolivar as the payor, but disclosed in Part II that Hector Flores was the person on whose behalf David Bolivar paid the $20,000.  Neither form disclosed Martinez' identity.

McGuire was indicted in two separate indictments on charges of conspiracy, money laundering, filing a false income tax return and filing a false IRS form 8300.  He was acquitted on all counts except count four, the count relating to the 8300 forms filed after the sting operation.  With the regard to the first 8300 form, the indictment alleged McGuire "falsely stated the identity of the individual from whom the cash was actually received and failed to disclose the person on whose behalf the transaction was conducted."  With regard to the second 8300 form, the indictment alleged

McGuire "falsely stated the identity of the individual from whom the cash was actually received." McGuire appeals his conviction on count four, the district court's order denying his post-trial motion for acquittal or new trial and the district court's sentencing order.

JURY INSTRUCTIONS

McGuire was convicted of violating 26 U.S.C. § 6050I(f)(1)(B) in conjunction with 26 U.S.C. § 7206(1). Title 26 § 6050I(f)(1)(B) requires proof that a defendant (1) for the purpose of evading the § 6050I reporting requirement; (2) caused or attempted to cause a trade or business to file a § 6050I return; (3) containing a *material omission or misstatement of fact.* 26 U.S.C. § 6050I (Supp.1995) (emphasis added). Title 26 U.S.C. § 7206(1) requires proof that a defendant: (1) willfully; (2) made and subscribed a return, statement or other document; (3) containing or verified by a written declaration that it was made under penalties of perjury; and (4) that the defendant did not believe that document to be true and correct as to *every material matter* (emphasis added). *United States v. McCord,* 33 F.3d 1434, 1450 (5th Cir.1994), *cert. denied sub nom., Haley v. United States,* --- U.S. ----, 115 S.Ct. 2558, 132 L.Ed.2d 812 (1995).

McGuire's jury received 38 separate instructions. Many of those instructions applied generally to all counts, while others were specific to the counts charged. Instruction 36, the only instruction specific to the count of conviction, required that the jury find that: (1) McGuire knew that the law practice had a duty to report currency transactions in excess of $10,000; (2) McGuire knowingly and willfully caused or attempted to cause the filing of a form 8300 containing a material omission or misstatement of fact; and that McGuire so acted (3) for the purpose of evading the reporting requirement. Instruction 20, which was specific to a separate § 7206(1) violation involving conduct unrelated to the sting operation, instructed the jury, in relevant part, as follows:

> If you find that the government has proved these things, you need not consider whether the false statement was a material false statement, even though that language is used in the indictment. This is not a question for the jury to decide.

I. Failure to Instruct on Materiality

"The Constitution gives a criminal defendant the right to demand that a jury find him guilty of all the elements of the crime with which he is charged." *United States v. Gaudin,* --- U.S. ----, ----,

115 S.Ct. 2310, 2314, 132 L.Ed.2d 444 (1995). McGuire first contends that he was deprived of this right because the district court removed the issue of materiality, an essential element of both the § 6050I reporting requirement and the § 7206(1) criminal enforcement provision, from the jury's consideration. We agree.

McGuire was convicted in May 1994. In May 1994, the well-settled law in the overwhelming majority of our federal circuits, including our own, considered the materiality of false statements made the subject of criminal prosecution to be a question of law for the court. *United States v. Daily,* 921 F.2d 994, 1004 (10th Cir.1990), *cert. denied,* 502 U.S. 952, 112 S.Ct. 405, 116 L.Ed.2d 354 (1991); *United States v. Corsino,* 812 F.2d 26, 31 n. 3 (1st Cir.1987); *United States v. Brantley,* 786 F.2d 1322, 1327 & n. 2 (7th Cir.), *cert. denied,* 477 U.S. 908, 106 S.Ct. 3284, 91 L.Ed.2d 572 (1986); *United States v. Hansen,* 772 F.2d 940, 950 (D.C.Cir.1985), *cert. denied,* 475 U.S. 1045, 106 S.Ct. 1262, 89 L.Ed.2d 571 (1986); *United States v. Greber,* 760 F.2d 68, 73 (3d Cir.), *cert. denied,* 474 U.S. 988, 106 S.Ct. 396, 88 L.Ed.2d 348 (1985); *Nilson Van & Storage Co. v. Marsh,* 755 F.2d 362, 367 (4th Cir.), *cert. denied,* 474 U.S. 818, 106 S.Ct. 65, 88 L.Ed.2d 53 (1985); *United States v. Swaim,* 757 F.2d 1530, 1534 (5th Cir.), *cert. denied,* 474 U.S. 825, 106 S.Ct. 81, 88 L.Ed.2d 66 (1985); *United States v. Chandler,* 752 F.2d 1148, 1150-51 (6th Cir.1985); *United States v. Elkin,* 731 F.2d 1005, 1009 (2d Cir.), *cert. denied,* 469 U.S. 822, 105 S.Ct. 97, 83 L.Ed.2d 43 (1984); *United States v. Lopez,* 728 F.2d 1359, 1362 n. 4 (11th Cir.), *cert. denied,* 469 U.S. 828, 105 S.Ct. 112, 83 L.Ed.2d 56 (1984); *United States v. Hicks,* 619 F.2d 752, 758 (8th Cir.1980). The Ninth Circuit considered the issue of materiality to be a question of law for most purposes, but recognized an exception for prosecutions involving 18 U.S.C. § 1001. *See United States v. Flake,* 746 F.2d 535, 537-38 (9th Cir.1984), *cert. denied,* 469 U.S. 1225, 105 S.Ct. 1220, 84 L.Ed.2d 360 (1985); *United States v. Valdez,* 594 F.2d 725, 728-29 (9th Cir.1979); *see also United States v. Gaudin,* 28 F.3d 943, 946 (9th Cir.1994) (en banc), *affd.,* --- U.S. ----, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995).

Shortly after McGuire's conviction, the Ninth Circuit, sitting en banc in *Gaudin,* turned the exception into the rule. *Id.* Gaudin was convicted on 43 counts of making false statements on loan documents in violation of 18 U.S.C. § 1001. *Id.* at 944. The Ninth Circuit reversed Gaudin's

conviction based on the district court's failure to submit the issue of materiality to the jury. *Id.* On subsequent rehearing en banc, the Ninth Circuit affirmed the panel decision, holding broadly that materiality is "in most situations ... a mixed question of law and fact," that must be submitted to the jury. *Id.* at 948-49 ("Only if it can be said that there is no factual component to the determination of materiality and thus, that it is a pure question of law, would the Sixth Amendment constraint not apply.").

The Ninth Circuit's decision in *Gaudin* was quickly affirmed by the Supreme Court. --- U.S. ----, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995). When materiality is an essential element in a criminal prosecution, the defendant has a constitutional right to have that issue submitted to the jury. *Id.* at ----, ----, 115 S.Ct. at 2314, 2320. There is no historical, logical or precedential exception to the Sixth Amendment jury right for criminal prosecutions for false statement or perjury. *Id.* at ---- - ----, 115 S.Ct. at 2316-19. *Gaudin*'s requirement that materiality be submitted to the jury has been applied to require submission of that element in prosecutions involving other federal statutes. *E.g., United States v. Keys,* 67 F.3d 801 (9th Cir.1995) (18 U.S.C. § 1623); *United States v. DiRico,* No. 94-1471, 1995 WL 646259 (1st Cir. Nov. 3, 1995) (unpublished) (26 U.S.C. § 7206(1)); *United States v. Wells,* 63 F.3d 745 (8th Cir.1995) (18 U.S.C. § 1014).

Because *Gaudin* was decided while McGuire's direct appeal was pending, he is entitled to invoke the rule of that case as controlling. *Griffith v. Kentucky,* 479 U.S. 314, 327-28, 107 S.Ct. 708, 716, 93 L.Ed.2d 649 (1987); *United States v. Oreira,* 29 F.3d 185, 188 (5th Cir.1994). McGuire's jury was instructed that it must find that the form 8300 contained a material omission or misstatement of fact (instruction 36), but the jury was further instructed that, even though the indictment required materiality, the issue was "not a question for the jury to decide" (instruction 20).[5] Gaudin's jury was likewise instructed that, while the offense required the false statements to be material, materiality was not a question for the jury. *Gaudin,* --- U.S. at ----, 115 S.Ct. at 2313.

---

[5]Although instruction 20 related specifically to count 5, there is no other instruction on materiality in the charge. We evaluate the sufficiency of the jury instructions with reference to the entire charge. *United States v. Welch,* 810 F.2d 485, 487 (5th Cir.), *cert. denied,* 484 U.S. 955, 108 S.Ct. 350, 98 L.Ed.2d 376 (1987).

*Gaudin* makes it error for the district court to fail to submit the issue of materiality to the jury. *See Oreira,* 29 F.3d at 188.

Not surprisingly, McGuire failed to object at trial to the district court's instruction which removed the issue of materiality from the jury. Indeed, to have done so would have required prescience on McGuire's part and would have been futile in light of well-established precedent, not only in this Circuit, but in every other federal circuit that had examined the issue, including the Ninth.[6] Nonetheless, McGuire's failure to preserve error at trial requires that we review his claim for plain error only. FED.R.CRIM.P. 52(b).

## II. Plain Error Analysis

We are convinced that the error in McGuire's case meets even the lofty plain error standard. Under Federal Rule of Criminal Procedure 52(b), the court may review "[p]lain errors and defects affecting substantial rights ... although they were not brought to the attention of the court." In *United States v. Olano,* 507 U.S. 725, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993), the Supreme Court construed rule 52(b) to require a showing that (1) there was error and no waiver; (2) the error was plain; and (3) that the error affected the defendant's substantial rights. *Id.* at 730-31, 113 S.Ct. at 1776. Provided the three elements are satisfied, the reviewing court has discretion to correct the otherwise forfeited error when the error "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (internal quotations omitted).

### A. Plainness and *Gaudin*'s Change in the Law

No one disputes that, in light of *Gaudin,* the jury instructions were in error. *See United States v. Calverley,* 37 F.3d 160, 162-63 (5th Cir.1994) (en banc), *cert. denied,* --- U.S. ----, 115 S.Ct. 1266, 131 L.Ed.2d 145 (1995); *Oreira,* 29 F.3d at 188. Plain errors are those that are clear and obvious under current law. *Olano,* 507 U.S. at 732-34, 113 S.Ct. at 1777. When McGuire was tried, existing precedent dictated that materiality was a question of law for the court. At that time,

---

[6]At the time of McGuire's trial, the Ninth Circuit exception for prosecutions involving 18 U.S.C. § 1001 was apparently limited to that statute. *United States v. Flake,* 746 F.2d 535, 537-38 (9th Cir.1984), *cert. denied,* 469 U.S. 1225, 105 S.Ct. 1220, 84 L.Ed.2d 360 (1985); *see also Gaudin,* 28 F.3d at 945.

any error in the jury instructions, which affirmatively removed that issue from the jury's consideration, was neither clear nor obvious. Now, of course, *Gaudin* makes that error patently clear and obvious.

The issue then becomes whether "plainness" is measured at the time of trial or at the time of appeal. We conclude that, when there is no error under existing law at the time of trial, but plain error under existing law when the appeal is decided, the plainness prong of Rule 52(b) is satisfied. *Olano* expressly declined to decide this issue, but the Supreme Court tipped its hand by stating that "[at] a minimum, the Court of Appeals cannot correct error pursuant to Rule 52(b) unless the error is clear under current law." *Id.* Our recent en banc decision in *Calverley,* which did not involve any change in the nature of error from the time of trial to the time of appeal, is not to the contrary.[7] *Calverley* omitted language tying "current law" to the "Court of Appeals" disposition, stating that Rule 52(b) " "[a]t a minimum' contemplates an error which was "clear under current law' at the time of trial." The Court went on to footnote *Olano*'s failure to decide the special case presented when there is a change in the law between the time of trial and the time of appeal. *See Calverley,* 37 F.3d at 162-63 & n. 18.

Any other construction would compromise the well-settled principle that criminal defendants are entitled to the benefit of changes in the law announced while their cases are pending on direct review. *See, e.g., Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987); *Oreira,* 29 F.3d at 188. To deny a criminal defendant the benefit of a rule that clearly departed from well-settled law to the contrary, merely on the basis that he failed to make a futile and probably frivolous objection, does not accord with basic fairness. We do not decide whether error that was merely undecided or unclear at the time of trial, and subsequently becomes clear on appeal, is subject to review for plain error. *See, e.g., United States v. Hurley,* 63 F.3d 1, 14 (1st Cir.1995) ("[t]his case does not present the conundrum of a failure to object followed by a wholly unexpected change in law"). That issue will be left for another day.

We take comfort in the fact that many of our sister circuits have similarly concluded that when

---

[7]Calverley pled guilty as to both counts of his indictment. The critical issue in *Calverley* related to sentencing, not guilt or innocence.

there has been a change in the law, provisions must be made such that whether the error is plain can be determined with reference to the law existing at the time of appeal. *United States v. Walker,* 59 F.3d 1196, 1198 (11th Cir.1995), *cert. denied,* --- U.S. ----, 116 S.Ct. 547, 133 L.Ed.2d 450 (1995); *United States v. Keys,* 67 F.3d 801, 809-10 (9th Cir.1995); *United States v. Retos,* 25 F.3d 1220, 1230 (3d Cir.1994); *United States v. Viola,* 35 F.3d 37, 41-42 (2d Cir.1994), *cert. denied,* --- U.S. ----, 115 S.Ct. 1270, 131 L.Ed.2d 148 (1995); *United States v. Jones,* 21 F.3d 165, 172 (7th Cir.1994); *United States v. Washington,* 12 F.3d 1128, 1138 (D.C.Cir.), *cert. denied,* --- U.S. ----, 115 S.Ct. 98, 130 L.Ed.2d 47 (1994).[8] Although the district court faithfully followed existing precedent and the jury instructions were not clearly in error when given, it is now obvious on the basis of *Gaudin* that the instructions unconstitutionally precluded the jury from considering an essential element of the offense. That error is plain for purposes of Rule 52(b).

## B. McGuire's Substantial Rights

---

[8]For example, the D.C. Circuit's "supervening decision doctrine" operates as an exception to the general requirement that review under Rule 52(b) requires an error that was plain at the time of trial. *E.g., United States v. Baucum,* 66 F.3d 362, 363 (D.C.Cir.1995); *United States v. Washington,* 12 F.3d 1128, 1138 (D.C.Cir.), *cert. denied,* --- U.S. ----, 115 S.Ct. 98, 130 L.Ed.2d 47 (1994). Some decisions of that Court review errors made plain by supervening changes in the law without clear reference to Rule 52(b) or plain error analysis, suggesting that a supervening change provides an independent basis for reviewing otherwise forfeited error. *E.g., United States v. Rhodes,* 62 F.3d 1449, 1452 (D.C.Cir.1995).

We are aware that the more traditional concerns addressed by rigorous review of forfeited error are not operative when a criminal defendant's failure to object is excusable. McGuire could not have foreseen the change in the law that occurred after his trial. Nonetheless, we conclude that the discretion allowed the Court of Appeals by *Olano* is the more appropriate vehicle for remedying such error. *Accord United States v. Viola,* 35 F.3d 37, 41-42 (2d Cir.) ("The better view is that Rule 52(b) is the sole source of our authority to correct errors not preserved by objection."), *cert. denied,* --- U.S. ----, 115 S.Ct. 1270, 131 L.Ed.2d 148 (1995); *United States v. Retos,* 25 F.3d 1220, 1228 (3d Cir.1994) (review of error made plain by supervening Supreme Court decision limited to Rule 52(b) plain error principles); *United States v. Jones,* 21 F.3d 165, 172 (7th Cir.1994) (although a supervening change in the law excuses the defendant's failure to object, the court's review is still subject to Rule 52(b)). Published cases in other circuits have uniformly applied Rule 52(b) analysis to *Gaudin* error, and even the D.C. Circuit has not explicitly held to the contrary.

We do not construct a legal fiction that the error was plain at the time of trial. Rather, we intend to construct an exception to that requirement for cases in which the law has clearly changed between the time of trial and direct appeal. In those rare cases, the plainness of the alleged error should be measured at the time of appeal.

Finally, forfeited plain error is not reviewable under Rule 52(b) unless it affected the defendant's substantial rights. "Normally, although perhaps not in every case, the defendant must make a specific showing of prejudice to satisfy the "affecting substantial rights' prong of Rule 52(b)." *Olano,* 507 U.S. at 734-36, 113 S.Ct. at 1778. The inquiry is much the same when the court reviews error preserved at trial, under the familiar harmless error analysis, except that in those cases, it is the government that bears the burden of demonstrating beyond a reasonable doubt that the error was harmless. FED.R.CIV.P. 52(a); *Id.* at 734-36, 113 S.Ct. at 1778. Although many constitutional errors can be harmless, "structural" errors that affect the framework within which the trial proceeds are not subject to that analysis. *Arizona v. Fulminante,* 499 U.S. 279, 307-09, 111 S.Ct. 1246, 1264, 113 L.Ed.2d 302 (1991). *Olano* explicitly left open the issue of whether Rule 52(b) requires that a defendant demonstrate prejudice when the error at issue is structural. *Olano,* 507 U.S. at 734-36, 113 S.Ct. at 1778.

Harmless error analysis focuses on the effect of the alleged error on the verdict actually returned by the jury. *Sullivan v. Louisiana,* 508 U.S. 275, 278-79, 113 S.Ct. 2078, 2081, 124 L.Ed.2d 182 (1993). When, as in this case, the jury was not instructed on an essential element of the offense, it is questionable whether there has been any constitutionally obtained verdict for harmless error analysis to act upon. *See Sullivan v. Louisiana,* 508 U.S. 275, 278-81, 113 S.Ct. 2078, 2081-82, 124 L.Ed.2d 182 (1993) ("to hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be—would violate the jury right"). Our own Court has spoken with a divided voice on the issue of whether failure to instruct on every essential element of the offense is plain error, structural error or error amenable to harmless error analysis. *See United States v. Oreira,* 29 F.3d 185, 188 n. 6 (discussing conflict and applying harmless error analysis); *United States v. Garza,* 42 F.3d 251, 253 (5th Cir.1994) (agreeing that, as the government conceded, a post-trial change in the law rendered failure to instruct on an essential element plain error); *United States v. Ortega,* 859 F.2d 327, 333 (5th Cir.1988) ("It is plain error for a judge to fail to instruct the jury on all essential elements of a crime, even though such an instruction is not requested"), *cert. denied,* 489 U.S. 1027, 109 S.Ct. 1157, 103 L.Ed.2d 216 (1989);

*United States v. Brown,* 616 F.2d 844, 846 (5th Cir.1980) ("we divine from precedent in this Circuit no rule that failure to specifically instruct on any single essential element of a crime per se constitutes plain error"); *United States v. Bosch,* 505 F.2d 78, 82-83 (5th Cir.1974) (failure to instruct an essential element is not plain error when it is clear that the error was harmless). Even Supreme Court authority on the point appears to be conflicting. *Compare Pope v. Illinois,* 481 U.S. 497, 503 n. 7, 107 S.Ct. 1918, 1922 n. 7, 95 L.Ed.2d 439 (1987) ("to the extent that cases prior to *Rose* may indicate that a conviction can never stand if the instructions provided the jury do not require it to find each element of the crime under the proper standard of proof ... they are no longer good authority"), *with Sullivan v. Louisiana,* 508 U.S. 275, 278-81, 113 S.Ct. 2078, 2081-82, 124 L.Ed.2d 182 (1993) (harmless error analysis inapplicable when jury verdict secured in violation of *In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 1072-73, 25 L.Ed.2d 368 (1970), which requires conviction on the basis of every essential element of the offense). *Gaudin* itself did not resolve the issue because the government failed to challenge the Ninth Circuit's determination that the error identified was both plain and structural, and therefore not amenable to harmless error analysis. *Gaudin,* --- U.S. at ----, ----, 115 S.Ct. at 2320, 2321 (Rehnquist, J. concurring).

The conflict within our own Circuit makes it inadvisable, and perhaps impermissible, to conclusively resolve in this case the proper scope of appellate review when the district court fails to instruct the jury on an essential element of a criminal offense. Regardless of whether such an error is structural, McGuire made a specific factual showing such that, in the circumstances of this case, the district court's failure to instruct on the issue of materiality was plain error which did affect his substantial rights.

Materiality was critical to Mcguire's defense at trial. As to the first form 8300, the government alleged that McGuire "falsely stated the identity of the individual from whom the cash was actually received and failed to disclose the person on whose behalf the transaction was conducted." As to the second form, the government alleged only that McGuire "falsely stated the identity of the individual from whom the cash was actually received." McGuire argued at trial: (1) that he subjectively believed the money was being delivered to him by Bolivar rather than Flores; and

(2) that once he disclosed Flores' name in the second form 8300, the internal revenue service would not be misled by the information provided in that form. *See Gaudin,* --- U.S. at ----, 115 S.Ct. at 2313 (a statement is material if it has a natural tendency to influence the decision of the decision-making body to which it is addressed). Therefore, an essential premise in McGuire's defense was that any misidentification of Bolivar was not material because the identity of the client was also disclosed on the form. McGuire elicited testimony relevant to this issue from his expert, who had significant experience in the criminal investigation division of the Internal Revenue Service. On the basis of the present record, the district court's denial of McGuire's Fifth and Sixth Amendment right to a jury determination on every essential element of the charged offense was not harmless. The district court's instruction that materiality was not an issue for the jury, although a correct statement of the law when given, constituted plain error affecting McGuire's substantial rights. Therefore, this court has authority pursuant to Rule 52(b), to correct that error. *Olano,* 507 U.S. at 734-36, 113 S.Ct. at 1778.

### C. Remedial Discretion

"Rule 52(b) is permissive, not mandatory." *Olano,* 507 U.S. at 734-36, 113 S.Ct. at 1778 (when the life or liberty of a criminal defendant is at stake, the courts of appeal have the authority to correct otherwise forfeited error when it is plain and affects the defendant's substantial rights). Whether plain error should be corrected lies within the sound discretion of the appellate courts. *Id.* at 734-37, 113 S.Ct. at 1778-79. The Supreme Court instructs that remedial discretion under Rule 52(b) should be exercised only when the error " "seriously affects the fairness, integrity or public reputation of judicial proceedings.' " *Id.* at 736-37, 113 S.Ct. at 1779 (quoting *United States v. Atkinson,* 297 U.S. 157, 56 S.Ct. 391, 80 L.Ed. 555 (1936)). Whether our remedial discretion should be exercised is a particularized inquiry that necessarily depends upon the facts of the specific case as well as the extent of legal prejudice imposed upon the defendant. *See Calverley,* 37 F.3d at 164. Moreover, an error may affect the substantial rights of the defendant without also rising to the level that it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Id.*

We are convinced that the circumstances of this case merit exercise of our remedial discretion.

First, the statutes of conviction, § 6050I and § 7206(1), both expressly require that the statements at issue be material. *Compare, United States v. Taylor,* 66 F.3d 254 (9th Cir.1995) (distinguishing *Gaudin* on the basis that materiality is neither an express nor an implicit element of 18 U.S.C. § 287). Second, the materiality of McGuire's statements identifying Bolivar as the payor was a critical part of McGuire's defense to the count of conviction, and the subject of conflicting testimony at trial. Considered as a whole, the record presents a serious factual question regarding the materiality of McGuire's statements. *United States v. Keys,* 67 F.3d 801, 811-12 (9th Cir.1995). Third, refusing to exercise our remedial discretion to correct the plain error identified in this case would result, not only in the denial of McGuire's Fifth and Sixth Amendment rights, but in an abdication of the principle that we adjudicate cases pending before this Court on direct review "in light of our best understanding of governing constitutional principles." *Griffith v. Kentucky,* 479 U.S. 314, 323, 107 S.Ct. 708, 713, 93 L.Ed.2d 649 (1987). Given the circumstances of this case, we conclude that the district court's failure to instruct on materiality seriously affected the fairness and integrity of McGuire's trial and, potentially, the public reputation of judicial proceedings. *See Griffith,* 479 U.S. at 322, 107 S.Ct. at 713 ("failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication"). We will exercise our discretion so as to not let the error stand. McGuire's conviction is reversed and the case remanded for further proceedings consistent with this opinion.

### III. Refusal to Deliver *Ratzlaf* Willfulness Instruction

Having concluded that the case must be retried, it is appropriate to address at least one issue that relates to the count of conviction and is likely to recur on remand. McGuire was convicted for violation of 26 U.S.C. § 6050I(f)(1)(B), in combination with 26 U.S.C. § 7206(1), which requires a showing of willfulness. McGuire contends that the district court erred by refusing to give his requested instruction on willfulness, which was based on the Supreme Court's holding in *Ratzlaf v. United States,* --- U.S. ----, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994). At issue in *Ratzlaf* were provisions of the Bank Secrecy Act which impose on financial institutions a reporting obligation similar to that imposed by § 6050I. Title 31 U.S.C. § 5324 states an offense for structuring a

transaction to evade the reporting requirement, while § 5322 specifies criminal penalties for willful violation of § 5324. Like McGuire, Ratzlaf was charged both with the offense of purposefully evading the obligation and with the penalty provision, which required a showing of wilfulness. *Ratzlaf,* --- U.S. at ----, 114 S.Ct. at 657. *Ratzlaf* held that the statutory formulation of the offense (§ 5322 and § 5324) required both government proof and a jury instruction on the issue of whether Ratzlaf willfully, i.e. with knowledge that his conduct was unlawful, violated § 5324. *Id.* at ----, 114 S.Ct. at 663.[9]

*Ratzlaf* does not provide the controlling definition of willfulness for prosecutions under 26 U.S.C. § 7206(1). Willfulness, for the purpose of that section, is defined as the intentional violation of a known legal duty. *United States v. Pomponio,* 429 U.S. 10, 11-13, 97 S.Ct. 22, 23-24, 50 L.Ed.2d 12 (1976); *United States v. Charroux,* 3 F.3d 827, 831 (5th Cir.1993). Although the jury was not given that precise definition, the jury was adequately instructed on the issue of willfulness. Instruction 17, an instruction that applied to all counts, charged the jury on the issue of specific intent:

> The crimes charged in this case are serious crimes which require proof of specific intent before the defendant can be convicted. Specific intent, as the term implies, means more than the general intent to commit the act. To establish specific intent the government must prove that the defendant knowingly did an act which the law forbids, purposely intending to disobey or disregard the law.

And in Instruction 21, the jury was charged:

> The word "willfully" in these instructions[ ] means that the act was committed voluntarily and purposely, with the specific intent to do something the law forbids; that is to say, with bad purpose either to disobey or disregard the law. Mere negligence, even gross negligence, is not sufficient to establish willfulness.
>
> If a person in good faith believes that an income tax return, as prepared by him, truthfully reports the taxable income and allowable deductions of the taxpayer under the internal revenue laws, he cannot be guilty of "willfully" making or subscribing a false or fraudulent return.

The district court did not abuse its discretion by refusing McGuire's requested instruction on the issue

---

[9]Less than six months after *Ratzlaf* was decided Congress amended the Bank Secrecy Act by incorporating the penalty provision previously codified as § 5322 into the reporting requirement of § 5324 and by redefining the elements of the offense to exclude any requirement of willfulness. *See* H.R.Conf.Rep. 103-652, 103d Cong., 2d Sess (1994), *reprinted in,* 1994 U.S.C.C.A.N.1977, 2024 (restoring the "clear Congressional intent" to require no more culpable conduct than a purpose to evade the reporting requirement).

of willfulness.

We note also that Instruction 36, relating to the count of conviction, neither identifies nor requires specific findings on the essential elements required for conviction under § 7206(1). On remand, if the case is retried, the jury must be required to find all of the essential elements set forth in § 6050I(f)(1)(B) and § 7206(1).

Finally, McGuire also claims on appeal that the evidence was insufficient to support his conviction and that he was unduly prejudiced by the prosecutor's improper closing remarks. Having reviewed those claims under the applicable standards of review, we find no reversible error. There are, therefore, no double jeopardy barriers to McGuire's retrial on remand. Our conclusions as to these issues are necessarily limited by what appears in the present, rather voluminous, record. Consideration was not limited to the testimony of the undercover agents and the transcripts of their conversations with McGuire. This panel's disposition of McGuire's sufficiency claim will obviously be of no binding effect on any subsequent appeal should McGuire be retried. We have likewise reviewed for plain error McGuire's claims on appeal that the jury instructions impermissibly allowed conviction on the basis of either form 8300 and that the jury instructions directed a verdict of guilty. Having considered the arguments and the entire record, we are persuaded that failure to review those claims on appeal does not "seriously affect the fairness, integrity or public reputation of judicial proceedings."

CONCLUSION

For the foregoing reasons, McGuire's conviction for violation of 26 U.S.C. § 6050I and 26 U.S.C. § 7206(1) is REVERSED and the case is REMANDED to the district court for further proceedings consistent with this opinion.

WIENER, concurring specially:

I concur in the result reached in Judge DeMoss's fine opinion; however, I respectfully disagree with a key aspect of his analysis. In particular, when both the trial court's ruling and the defendant's failure to object to that ruling are fully explained and excused by a supervening change in the law, I would not, for the reasons stated more fully below, visit upon that defendant the burden

of plain error review. Accordingly, I do not join in either the last sentence of Part I of Judge DeMoss's opinion (holding that plain error applies in this case) or the analysis set forth in Part II. Yet, despite the differences in the way that we get there, we reach the same result: McGuire's conviction for violation of 26 § U.S.C. 6050I and 26 U.S.C. § 7206(1) must be reversed, his sentence vacated, and his case remanded for a new trial on those charges.

I

INTRODUCTION

Out of the blue, and overturning law long-settled in this and all other circuits, the Supreme Court, in *United States v. Gaudin,*[1] held that when, in a criminal prosecution materiality is an element of the crime charged, the Constitution requires that the materiality element be decided by the jury as an issue of fact, not by the judge as an issue of law (hereafter, *Gaudin* Rule). In this appeal, we must decide a narrow issue: As the trial judge in McGuire's case withheld the question of materiality from the jury and decided that issue himself, should we reverse McGuire's conviction? In positing that question, this appeal presents this court with an opportunity to clarify a broader issue that is sure to resurface: How do we review unobjected-to evidentiary rulings, jury charges, and the like, that were clearly unobjectionable at trial but that have become "error" post trial by virtue of a supervening change in the law (hereafter, *Gaudin*-type issue)?[2] More specifically, when a supervening change in the law explains (and unquestionably should excuse) the absence of a trial objection, do we review *Gaudin*-type issues (1) under the plain error rubric or some variation thereof, or (2) under the harmless error rubric, just as we would if a contemporaneous objection had been made? Judge DeMoss concludes that a *Gaudin*-type issue should be reviewed under the plain error rubric. Instead,

---

[1]--- U.S. ----, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995).

[2]This is the second time we have seen this type issue in the last year. A similar problem arose after *Ratzlaf v. United States,* --- U.S. ----, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) (willfulness requirement of 31 U.S.C. § 5324(3) mandates that the government prove, and the jury be instructed, that a defendant acted with knowledge that the structuring he undertook was unlawful). We have not yet had to decide this larger issue in the context of *Ratzlaf. See, e.g., United States v. Garza,* 42 F.3d 251, 253 (5th Cir.1994) (government conceded jury instructions were plain error under *Ratzlaf* ), *cert. denied,* --- U.S. ----, 115 S.Ct. 2263, 132 L.Ed.2d 268 (1995); *United States v. Oreira,* 29 F.3d 185, 189 (5th Cir.1994) (defendant requested proper jury instruction and objected to its omission at trial, and thus preserved *Ratzlaf* issue for review).

I would review a *Gaudin*-type issue as if there had been a contemporaneous objection, and thus would ultimately apply the harmless error analysis.

To review *Gaudin*-type issues under the plain error rubric strikes me as patently unfair to defendants and logically antithetical to the purpose of plain error. Both conceptually and practically, the plain error rule is intended to encourage and facilitate judicial efficiency. We require a defendant to make contemporaneous objections so that the district court will have an opportunity to correct its own errors instanter and thereby avert unnecessary appeals and multiple trials. Consequently, when the defendant is derelict and fails to bring a correctable error to the court's attention, we deem him to have forfeited the error. Accordingly, to secure a reversal on appeal despite his forfeiture, we require the defendant to establish that the unobjected-to error was so extreme that it affected his substantial rights.[3] In short, we do not want defendants sandbagging the trial judge and then wasting judicial resources with a "gotcha" reversal on appeal.

When there is a supervening change in the law, however, as there was here, none of these concerns are present. After all, a pre-*Gaudin* objection would have been summarily overruled by the district court, so no purpose of judicial economy is served by "penalizing" the defendant for failing to perform the hollow and obnoxious act of objecting in the face of well-settled precedent to the contrary (unless at the time of trial there was reason to expect that a change in the law is in the offing, e.g., cert. pending, advisory committee recommendations in the mill, a bill to change the law winding its way through Congress, or the like).

II

DISCUSSION

A. MUST WE APPLY PLAIN ERROR REVIEW?

1. *How Rule 52(b) Works*[4]

---

[3]Fed.R.Cr.P. 52(b).

[4]Rule 52(b) reads as follows:

> **Plain Error.** Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.

As a threshold issue, we must decide whether under *United States v. Olano*[5] or *United States v. Calverley,*[6] or both, our appellate authority to review *Gaudin*-type issues is limited to Rule 52(b), or whether we have independent authority to review such "errors" directly. Recently, in *Olano,* the Supreme Court clarified our general appellate authority under Rule 52(b) to review unobjected-to errors.[7] The Court identified three criteria, each of which it characterized as a "*limitation on appellate authority*"[8]: First, there must be "error," or deviation from a legal rule, which has not been *waived.*[9] Second, the error must be "plain," which at a minimum means "clear under current law."[10] Third, the plain error must "affect[ ] substantial rights," which normally requires a showing of prejudice.[11]

In plain error review under Rule 52(b), as contrasted with harmless error review under Rule 52(a), the defendant bears the burden of persuasion.[12] The three *Olano* criteria are necessary but alone they do not require a court to correct an unobjected-to error. Even when all three prerequisites are established, the decision whether to correct the error falls within the appellate court's *discretion.*

---

[5]507 U.S. 725, 732-34, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993).

[6]37 F.3d 160 (5th Cir.1994) (en banc), *cert. denied,* --- U.S. ----, 115 S.Ct. 1266, 131 L.Ed.2d 145 (1995).

[7]*See Olano,* 507 U.S. at 732-37, 113 S.Ct. at 1777-79.

[8]*Id.* at 732-34, 113 S.Ct. at 1777. In *Calverley,* we recognized these three criteria and explained that in "exceptional circumstances, appellate courts may, in the interest of justice, notice errors to which no objection has been made"; however, we also qualified that statement in the next sentence by stating that "[s]uch circumstances are *sharply circumscribed* by the plain error standard requiring that unobjected-to errors be "plain' and "affect substantial rights.' " 37 F.3d at 162 (emphasis added & footnotes omitted).

> Although the three *Olano* criteria have been described by the Supreme Court and this court as *limitations* on appellate authority to review unobjected-to errors, neither court has expressly held that Rule 52(b) provides the *exclusive* authority or means to review unobjected-to errors.

[9]*Olano,* 507 U.S. at 732-34, 113 S.Ct. at 1777.

[10]*Olano* at 732-34, 113 S.Ct. at 1777.

[11]*Olano,* 507 U.S. at 732-36, 113 S.Ct. at 1777-78; *Calverley,* 37 F.3d at 164.

[12]*Olano,* 507 U.S. at 734-36, 113 S.Ct. at 1778; *Calverley,* 37 F.3d at 164.

In short, Rule 52(b) is permissive, not mandatory: If the forfeited (but not waived) error is "plain" and "affects substantial rights," an appellate court has the *authority* to reverse or vacate, but is *not required* to do so.[13]

2. *Most Circuits Apply Plain Error*

Judge DeMoss in his opinion and Judge Smith in his dissent join the majority of the circuit courts in concluding that plain error review should be applied to *Gaudin*-type issues. Those courts agree that *Olano* seems to require that plain error review be applied to *all* unobjected-to errors.[14] This conclusion derives from the following syllogism: (1) Under *Olano,* all *forfeited errors* are subject to plain error review; (2) a *Gaudin*-type issues is a *forfeited error;* (3) ergo we must apply plain error review to *Gaudin*-type issues. Even if I had to agree with the first premise, the entire motivation of my writing separately is my abject disagreement with the second premise: All logic is defied if we hold that a *Gaudin*-type issue is "forfeited error" for lack of a contemporary objection. Wholly distinguishable from the situations in *Olano* and *Calverley,* the court's treatment of *materiality* in McGuire's trial—when viewed in light of the law as it existed then, the way that Judge Smith tells us we must—*was not error at all.* Consequently, McGuire had nothing to which he could object and thus nothing to *forfeit.* This logical fallacy in the second premise produces a fatally flawed syllogism, in turn producing the flawed conclusion that we must apply plain error review to *Gaudin*-type issues. Before we attach conclusionary tags and labels such as "forfeited error," it seems

---

[13]*Id.*

[14]*See United States v. Lopez,* 71 F.3d 954, 960-61 (1st Cir.1995); *United States v. Viola,* 35 F.3d 37, 41-42 (2d Cir.) (discussing Rule 52(b) versus independent authority to review *Gaudin*-type issues and concluding that "[t]he better view is that Rule 52(b) is the sole source of our authority to correct errors not preserved by objection."), *cert. denied,* --- U.S. ----, 115 S.Ct. 1270, 131 L.Ed.2d 148 (1995); *United States v. Retos,* 25 F.3d 1220, 1228 (3d Cir.1994) ("Because Retos failed to object to the jury instruction [which is now erroneous under *Ratzlaf* ] at trial, our review is limited to plain error under Federal Rule of Criminal Procedure 52(b)"); *United States v. Jones,* 21 F.3d 165, 172 (7th Cir.1994) (holding that even though supervening change in law excuses failure to object, all unobjected-to errors are subject to plain error review on appeal); *United States v. Gaudin,* 28 F.3d 943, 951 (9th Cir.1994) (en banc) ("Because Gaudin did not object to the instruction ... we must ... determine whether this error was "plain error.' "); *United States v. Walker,* 59 F.3d 1196 (11th Cir.) (Regardless of change in the law, "we review issues not preserved below for plain error."), *cert. denied,* --- U.S. ----, 116 S.Ct. 547, 133 L.Ed.2d 450 (1995); *United States v. Washington,* 12 F.3d 1128, 1138 (D.C.Cir.), *cert. denied,* --- U.S. ----, 115 S.Ct. 98, 130 L.Ed.2d 47 (1994).

meet and proper that we pause and examine the definition.

3. *Where Was The Error?*

In *Olano,* the Court was careful to articulate the difference between waiver and forfeiture: "Whereas forfeiture is the failure to make the timely assertion of a right, waiver is the "intentional relinquishment or abandonment of a known right.' "[15] Even though we have two clear categories—waiver and forfeiture—the issue presented in this appeal does not fit logically into either. There was no waiver because the case law at the time of trial indicated beyond cavil that no defendant in this circuit (or anywhere else for that matter, even in the Ninth Circuit) had a right to have a jury determine the question of materiality.[16] Moreover, nothing was "in the works" or "on the drawing boards" that would have put anyone on notice that a major change in the law was under consideration. So, just as he waived no "error," McGuire forfeited no "error": How could a defendant timely object to the violation of a "right," when all case law to date made pellucidly clear that no such "right" existed. Thus it is axiomatic that if *Gaudin*-type issues are neither waived error nor forfeited error, they must be something else. Whatever else they may be, they were not errors as of the time of the trial.

The trial court could not have ruled other than the way it did, so it committed no error; in failing to object to that which was non-objectionable, the defense committed no error—either by waiver or forfeiture. Thus it is a badly misleading fiction to label a *Gaudin*-type issue as *error.*[17] Quite simply, we should not try to force this square *Gaudin* peg into the round plain error hole drilled by *Olano* and *Calverley;* instead, we should proceed to carve out a separate but limited *square* hole into which *Gaudin*-type "errors" fit, then define the proper standard under which we review them.

---

[15]507 U.S. at 732-34, 113 S.Ct. at 1777 (citations omitted); *See also Calverley,* 37 F.3d at 162.

[16]*See, e.g., United States v. Swaim,* 757 F.2d 1530, 1534 (5th Cir.), *cert. denied,* 474 U.S. 825, 106 S.Ct. 81, 88 L.Ed.2d 66 (1985).

[17]Judge Smith's analysis has a curiously convenient relationship to this fiction, giving rise to what I see as a "chicken or egg" problem. For even though he begins with the proposition that plain error is the applicable standard, he ultimately concludes that there was no error at trial. Which question comes first: (1) was there an error, or (2) do we apply plain error review?

In the legal vernacular, *Olano* and *Calverley* are "distinguishable" from *Gaudin*-type issues. It follows, then, that as the issue we no w face was not an error at all at the time of trial, our review should not be restricted to plain error, and we should not be constrained by the cases interpreting that standard.

B. THE SUPERVENING DECISION DOCTRINE

1. *The D.C. Circuit*

In the D.C. Circuit, the "supervening decision doctrine" appears to allow a direct harmlessness review of a true *Gaudin*-type issue.[18] Under this doctrine, the appellate court can consider issues not raised at trial *if* a supervening decision has "changed the law in appellant's favor and the law was so well settled at the time of trial that any attempt to challenge it would have appeared pointless."[19] The D.C. Circuit offered two justifications for the supervening decision doctrine. First, it would be unfair, and even counter-productive to the efficient administration of justice, to expect a defendant to object at trial when existing law is so clear that it forecloses any possibility of success.[20] Second, unless appellate courts consider the effect of a supervening decision in such a situation, the defendant will be denied the benefit of the change in the law.[21] (This second prediction would come true every time if we were to follow the position advocated in today's dissent). Regrettably, the D.C. Circuit has not yet made clear whether this doctrine operates only *within* the limitations of Rule 52(b) or independently as separate authority and procedure for reviewing *Gaudin*-type issues *directly* for harmlessness.

---

[18]*See United States v. Washington,* 12 F.3d 1128, 1138 (D.C.Cir.), *cert. denied,* --- U.S. ----, 115 S.Ct. 98, 130 L.Ed.2d 47 (1994).

[19]*Id.* at 1139. *See also United States v. Baucum,* 66 F.3d 362, 363 (D.C.Cir.1995) (per curiam) ("[U]nder the supervening-decision doctrine, we will consider an issue not raised at trial "where a supervening decision has changed the law in appellant's favor and the law was so well-settled at the time of trial that any attempt to challenge it would have appeared pointless.' "); *United States v. Rhodes,* 62 F.3d 1449, 1450 (D.C.Cir.1995) (same).

[20]*Washington,* 12 F.3d at 1139.

[21]*Id.; Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) ("We therefore hold that a rule for the conduct of criminal prosecutions is to be applied retroactively to all cases, state or federal, pending on direct review or not yet final, with no exception for cases in which the new rule constitutes a "clear break' with the past.").

In *United States v. Washington*[22] for example, a panel of the D.C. Circuit recited the plain error standard, then proceeded to define the supervening decision doctrine. The structure of the *Washington* analysis would thus appear to imply that the doctrine must be applied within the confines of Rule 52(b) only. Ultimately, however, the *Washington* panel declined to apply the doctrine to the facts before it because the alleged supervening decision was determined not to be a "change" in the law.[23] As a result, the analysis is aborted and we are left without a precise application of the doctrine but with a negative pregnant implying its applicability to a situation involving a truly unforeseeable change in the law.

Indeed, in *United States v. Rhodes,*[24] a different panel of the D.C. Circuit embraced the supervening decision doctrine and held "[a]ccordingly, we address [defendant's unobjected-to error] on the merits."[25] Significantly, *Rhodes* says nothing about Rule 52(b) or plain error review, strongly suggesting that the supervening decision doctrine (1) operates outside Rule 52(b), and (2) provides an independent authority to review that rare breed of unobjected-to "errors" which are produced by true post-trial, unforeseeable changes in the law.

---

[22]12 F.3d at 1138 (supervening change in the reasonable doubt jury instruction). *Washington* involved a challenge to a jury instruction directing the jury that it could find the defendant guilty if the evidence caused them to have a "strong belief" in the defendant's guilt. Washington did not object at trial, but urged on appeal that *Sullivan v. Louisiana,* 508 U.S. 275, 113 S.Ct. 2078, 124 L.Ed.2d 182 (1993), a supervening decision case, changed the law, and required reversal despite the lack of objection. In *Sullivan,* the Supreme Court held that a jury instruction which equates "beyond a reasonable doubt" with "strong belief" is constitutionally deficient.

[23]The court held that at the time of trial the constitutionality of the "strong belief" jury instruction *was not so well-established that any objection would have seemed futile.* According to the *Washington* court, no court of appeals had upheld the "strong belief" jury instruction at the time of trial and several cases in that circuit should have put the defendant on notice of the deficiency of such an instruction. *Id.* at 1139. That cannot be said of *McGuire* and "materiality" pre-*Gaudin.* Thus, the supervening decision doctrine did not apply. *See also Baucum,* 66 F.3d at 364 (reaffirming availability of supervening decision doctrine, but declining to apply for reasons similar to *Washington:* (1) challenging the constitutionality of a new statute would not have been futile; (2) defendant on notice because previous challenge had been successful).

[24]62 F.3d 1449 (D.C.Cir.1995). This panel addressed the applicability *Austin v. United States,* 509 U.S. 602, 113 S.Ct. 2801, 125 L.Ed.2d 488 (1993) and *Department of Revenue of Montana v. Kurth Ranch,* --- U.S. ----, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), 62 F.3d 1449 (D.C.Cir.1995). Both of these decisions, the defendant urged, were supervening changes in the law of double jeopardy.

[25]*Rhodes,* 62 F.3d at 1452.

## 2. *Follow the D.C. Circuit's Lead*

I would follow the path enlightened by the D.C. Circuit and hold that the supervening decision doctrine pertains, serving to preserve an issue for appeal in the relatively rare instances when the following factors coincide: (1) law that is well-settled and thus unobjectionable at the time of trial (2) is changed (3) without warning (4) during direct appeal. By *changed* I mean reversed or overruled, not merely "fine tuned" or clarified.[26] When all factors are present, the defendant would be entitled to the benefit of the supervening change.[27] The supervening change in the law both explains and excuses the absence of an objection by the defendant. Accordingly, I would treat such an issue as though it had been preserved for appellate review, and would test for harmlessness rather than apply plain error scrutiny.

Although my analysis would treat the subject issue as a non-error at trial and as an error on appeal, my position is consistent with the relevant precedent. When the materiality issue in the instant case is viewed as of the time of *trial,* there was no error under the case law of this circuit; however, when the same issue is viewed as of the time of *appeal,* an "error" has materialized out of thin air solely because the Supreme Court has overruled prior precedent. In other words, at McGuire's pre-*Gaudin* trial, there was no error; on appeal post-*Gaudin,* there is "error." The supervening decision both creates this distinction and excuses the absence of a contemporaneous objection. Thus the supervening decision doctrine should be interposed to preserve the *Gaudin*-type issues for appellate review because by definition they can arise only after trial and before exhaustion of all appellate procedures. The "bottom line" is that, unless as an appellate court we now come forward with a new rule of review, no criminal defendant will ever receive the *Griffith* benefit of a supervening change in the law.

---

[26]I find it both significant and important to my analysis that the Supreme Court in *Olano* and this court in *Calverley* left open the question whether plain error review should apply "where the error was unclear at the time of trial but becomes clear on appeal because the applicable law has been *clarified.*" For, in the instant case, the "error" was not just unclear at trial, it was not error at all; and the applicable law has not just been "clarified," it has been changed entirely.

[27]*Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987) (requiring that criminal defendants receive the benefit of changes in the law governing the conduct of criminal prosecutions, at least those made during the pendency of his appeal).

This is precisely the flaw that, with genuine respect, I discern in Judge Smith's dissent: His literal examination, as of the time of trial, of the "error" produced by a post-trial sea change in the law ensures that no defendant will ever receive any benefit from a supervening change in the law. He first concludes that, as there was no objection at trial, plain error applies. Second, he looks to the case law at the time of trial and, as the supervening change came after the trial, he finds no error. Third, he points out that, as a result, the second necessary precondition of plain error review—that the error be plain—is not satisfied. He then concludes that the failure to meet this precondition has "tied his hands" and he cannot review the issue. Essentially, Judge Smith uses plain error review to bar defendants from benefiting from a supervening change. If we follow this "cut 'em off at the pass" approach, not only is McGuire denied the benefit of *Gaudin,* but henceforth every criminal defendant will necessarily be denied the benefit of a supervening change in any law. This cannot be.

3. *Burden of Proof*

To avoid reversal of a conviction under harmless error review, the *government* must establish that the defendant's substantial rights were *not* affected.[28] For all intents and purposes, Judge DeMoss's standard and my proposed standard are the same except that we place the burden of proof on the "substantial rights affected" issue on opposite parties. Judge DeMoss, by remaining within the stricture of the plain error rubric, burdens the *defendant* with the task of proving that his substantial rights were affected, while I, by following the supervening decision doctrine's harmless error procedure, would require the *government* to establish that the defendant's substantial rights were not affected.

The burden-shift I advocate here is not without precedent. True, when faced with a supervening decision *changing* the law, the Second Circuit sticks with the plain error fiction. But it does so with a slight yet significant twist: The burden of proof under the plain error analysis is shifted to the government, requiring it to show that the error did not affect the defendant's substantial rights.[29] As a practical matter, this is very close to, if not the same as, the treatment I am proposing.

[28]*See* Fed.R.Cr.P. 52(a).

[29]*See Viola,* 35 F.3d at 42.

Significantly, the Second Circuit justifies its burden shift by contrasting harmless error and plain error.[30] In the ordinary case, if it is clear at the time of trial that an instruction or an evidentiary ruling is erroneous, the defendant knows or should know that he has a duty to object. And, if he fails to object, he forfeits his legal right to have the error corrected because he has impeded the judicial process by failing to prompt the trial court and afford it the opportunity timely to correct the error. In that ordinary case, it is eminently fair to hold a defendant accountable for his failure and to deter defendants from strategically withholding an objection in order to seek reversal on appeal.[31]

Conversely, when a supervening decision truly changes well-settled law, the analysis changes dramatically. A defendant has no duty to object to a jury charge that is indisputably supported by established law. Obviously, an objection would produce no self-correction by the trial court, so the absence of an objection has no effect on the efficient administration of the judicial system. It follows that, as no such legal right existed at the time of trial, the defendant did not "forfeit" a "right" by not making an objection. To penalize defendants for failing to challenge entrenched precedent would only encourage frivolous objections and appeals. Surely, when the source of what Judges Smith and DeMoss call plain error is a supervening change, the defendant has not been derelict in failing to object and should not be saddled with the burden of proving prejudice.[32] In this special context, then, just as in harmless error review under Rule 52(a), the *government* should bear the burden of showing that the "error" did *not* affect the defendant's substantial rights.

C. THE SUPERVENING DECISION DOCTRINE AND MCGUIRE

In McGuire's case, all elements of the supervening decision doctrine are present, and the government cannot establish that the failure to send the materiality issue to the jury was harmless. Under the law of this circuit as it existed at the time of trial, McGuire did not have the right to have the jury decide the issue of materiality.[33] During the pendency of his appeal, however, the Supreme

---

[30]*Id.*

[31]*Id.*

[32]*Id.*

[33]*Swaim,* 757 F.2d at 1534.

Court reversed that very law and in so doing gave that right to all criminal defendants, including McGuire. McGuire's failure to object is explained and excused by this supervening change in the law. Thus, McGuire's *Gaudin*-type issue should be treated as though it had been preserved, authorizing review under the harmless error rubric, not under plain error.

Generally, an error is harmless if the reviewing court is certain, after viewing the entire record, that the error did not affect the defendant's substantial rights.[34] As noted by Judge DeMoss, McGuire vigorously contested the materiality issue. Throughout the trial, he insisted that the statements in question were not material. Indeed, this was his principal defense. As materiality was a hotly disputed element of the offense charged and was a key issue to the defense, the failure of the district court to allow the jury to determine the element of materiality indisputably affected McGuire's substantial rights. I hasten to add that alone the presence of the supervening decision doctrine does not entitle a defendant to automatic reversal; it does nothing more than guarantee that the court will examine the record as a whole to determine whether the "error" retroactively produced by the supervening decision affected the defendant's substantial rights. Like Judge DeMoss, I am convinced that in this case it did. I am equally convinced that if only Judge Smith's view of the law would permit him to reach the substantial rights issue, he too would agree that here such rights were affected. And, although in this case we might all agree on the result, regardless of whether the burden of proving prejudice must be borne by the defense or by the government, such might not always be the case. Thus the importance of emphasizing a harmless error rather than a plain error analysis, and their respective burdens of proof, could easily loom large in a case with somewhat different factual aspects.

III

CONCLUSION

I find it particularly perverse to require a defendant either to object in the face of clearly established law to the contrary or face a stacked appellate deck in the form of plain error review. I find it equally perverse to deny a defendant appellate review of an issue arising from a supervening change in the law: *Griffith* demands that he is entitled to reconsideration in light of all changes in the

---

[34]*See* Fed.R.R.P. 52(a).

law occurring during the pendency of his appeal. And I find it a cruel irony to subject the defendant to plain *error* review when no *error* was committed at the time of the trial, either by the court in following the law as it then existed or by the defense in not interposing a frivolous objection. Consequently, I urge this circuit to adopt a separate jurisprudential doctrine for the review of *Gaudin*-type issues—specifically, the supervening decision doctrine set forth above—and in such cases to avoid the plain error rubric. Although I have failed to win over either of my colleagues on this panel to my position, I specially concur in the result reached in Judge DeMoss's opinion and write separately in the hope of encouraging the rest of my colleagues to consider well adopting the supervening decision doctrine which I champion today.

JERRY E. SMITH, Circuit Judge, concurring in part and dissenting in part:

## I.

While concurring in the remainder of the majority opinion, I respectfully dissent from part II, because I read *United States v. Calverley,* 37 F.3d 160 (5th Cir.1994) (en banc), *cert. denied, ---* U.S. ----, 115 S.Ct. 1266, 131 L.Ed.2d 145 (1995), as requiring us to consider the clarity of the law at the time of the claimed error, not at the time of review. *Calverley* holds that plain error "*at a minimum,* contemplates an error which was clear *under current law at the time of trial.*" *Id.* at 162-63 (emphasis added, internal quotations omitted). Our analysis of the plaintiff's claim in *Calverley* shows that we meant what we said: "Assuming without deciding that studied analysis of [the law] would lead to the conclusion that [the defendant's argument is correct], *this conclusion was not obvious when the court sentenced Calverley.... Consequently, neither the trial judge nor the prosecutor may be considered derelict in failing to notice [the error].*" *Id.* at 165 (emphasis added).[1]

In short, when assessing the clarity of a claimed error, we do not directly consider whether error occurred; instead, we determine only whether the district court was "derelict" in making an "obvious" error. Subsequent legal developments are irrelevant.

---

[1]This passage clarifies our observation that the Supreme Court had declined to determine the relevance of intervening precedents. *See* 37 F.3d at 163 n. 18. While that footnote is ambiguous—it could mean either that we were also reserving that issue or that while we were speaking to it, we were aware that the case we were citing had not—the subsequent passage considers only the obviousness of the claimed error *at the time the district court made it.*

The majority, in its own words, "construct[s] an exception" to this rule. Maj. op. at 2817 n. 8. *Calverley* carefully lays out a series of bright-line rules, reconciling many of our precedents and overruling all others: "Although most of our opinions have recognized that an error must be clearly evident to be plain, a significant number have omitted or given insufficient weight to this element of the plain error equation. We today disavow all holdings and articulations inconsistent herewith." 37 F.3d at 163-64; *see also id.* at 163 n. 20, 164 n. 27 (citing overruled cases).

In summary, we decided *Calverley* en banc, just over a year ago, in a thorough and carefully-reasoned opinion that overrules a significant number of panel opinions in order to clarify this area of the law. As a result, *Calverley* deserves to be interpreted generously and deferentially.[2]

II.

Although the majority is correct that an objection would have been perceived as frivolous at the time of trial, following *Calverley* would not cut against the policies that underlie plain error review. If we were concerned primarily with fixing mistakes, and not with protecting defendants against derelict judging, we would reverse all errors that are "plain" or "obvious" *to us,* regardless of whether other appellate judges have already ruled on similar claims. Whether a controlling precedent is decided before trial, between trial and appeal, or after appeal is pure happenstance; no matter how we conduct plain error review, we will treat defendants differently at divers times.

We therefore review forfeited errors only to protect "the fairness, integrity, [and] public reputation of judicial proceedings,"[3] and we do so by ensuring that criminal defendants are not convicted or sentenced in blatant disregard of settled law. But we do not insist that trials be free of forfeited error.

Application of *Calverley* in this context also would be consistent with the line of cases holding that we must apply the law as it is understood at the time of appeal. We review a claim of forfeited

---

[2]Most recently, this court has interpreted *Calverley* in a similar fashion, in *United States v. Dupaquier,* 74 F.3d 615, 619 (5th Cir.1996). This caselaw is binding on us, as an interpretation and application of *Calverley.*

[3]We reverse even obvious errors only when they affect a defendant's substantial rights and "seriously affect the fairness, integrity, or public reputation of judicial proceedings." *Id.* at 164 (quoting *United States v. Atkinson,* 297 U.S. 157, 160, 56 S.Ct. 391, 392, 80 L.Ed. 555 (1936)).

error only if the appellant satisfies the plain error requirements of FED.R.CRIM.P. 52(b), just as we consider a habeas corpus petition or 42 U.S.C. § 1983 claim only when our older precedent satisfies a set of threshold requirements.[4] If a claim meets the dictates of rule 52(b), we follow *Griffith v. Kentucky,* 479 U.S. 314, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987), and evaluate the merits according to our current understanding of the law.[5]

I agree with the majority that *Calverley* is not technically *stare decisis* on this point because it did not present the question of an intervening precedent. I also understand that application of *Calverley* to the facts at hand might appear harsh, as an objection would have been perceived as frivolous. Nonetheless, I would follow our own precedent and affirm.

---

[4]*See Teague v. Lane,* 489 U.S. 288, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (holding that habeas petitioners receive the benefit of "new rules" only in limited circumstances); *Rankin v. Klevenhagen,* 5 F.3d 103, 108 (5th Cir.1993) (deciding that officials have qualified immunity against suits under § 1983 if their actions were reasonable in light of judicial precedent at the time of the offense).

[5]At least three Supreme Court Justices apparently agree that we must look to the clarity of the law at the time of the error. Although the government waived the plain error requirements in *Gaudin,* Chief Justice Rehnquist noted that because all circuits but one had found materiality to be a question of law, "it is certainly subject to dispute whether the error in this case was "clear under current law.' " *United States v. Gaudin,* --- U.S. ----, ----, 115 S.Ct. 2310, 2322, 132 L.Ed.2d 444 (1995) (Rehnquist, C.J., concurring, joined by O'Connor and Breyer, JJ.) (quoting *United States v. Olano,* 507 U.S. 725, 732-34, 113 S.Ct. 1770, 1777, 123 L.Ed.2d 508 (1993)) (emphasis added). *See also United States v. Allen,* 76 F.3d 1348, 1366-68 (5th Cir.1996) (applying plain error analysis in light of intervening decision in *Gaudin*).