UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 95-50302
_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

MARIO ULLOA,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Western District of Texas
_____

August 27, 1996

Before POLITZ, Chief Judge, JOLLY and BARKSDALE, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Primarily at issue in this challenge to a guilty plea under the "use" prong of 18 U.S.C. § 924(c)(1) (additional imprisonment for using or carrying a firearm "in relation to any crime of violence or drug trafficking crime") is our standard of review in light of Ulloa's claim, *inter alia*, that the post-plea decision in ***Bailey v. United States***, __ U.S. __, 116 S. Ct. 501 (1995), changes our precedent on

bartering drugs for firearms. Pursuant to *Bailey,* Mario Ulloa claims that, even though he bartered drugs for firearms, he did not actively employ the firearms, and that, therefore, his § 924(c)(1) conviction cannot stand. We **AFFIRM**.

I.

In August 1994, Ulloa was indicted on two drug counts and one count under the "use" prong of § 924(c)(1), which provides in relevant part: "Whoever, during and in relation to any ... drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such ... crime, be sentenced ... [,] if the firearm is a machinegun, ... to imprisonment for thirty years." Ulloa pled guilty in March 1995. As a result, he received a 30-year term of imprisonment on the firearm "use" count, to be served consecutive to concurrent five-year terms on the drug counts.

To support the plea, the Government offered the requisite factual basis; Ulloa did not make a material objection. In no shape, form, or fashion did he assert that the factual basis was not sufficient for conviction under the "use" prong. His guilty plea was unconditional.

The factual basis presented by the Government was as follows. In July 1994, Ulloa asked Cubillos, an undercover officer who had previously declined Ulloa's offers to sell him drugs, if he knew anyone willing to exchange firearms for drugs

2

or money. Cubillos notified the Bureau of Alcohol, Tobacco and Firearms and was instructed to await a similar offer from Ulloa. Subsequent to Ulloa again approaching him, Cubillos gave him photographs supplied by the ATF of several types of firearms in which Ulloa had expressed interest -- machine guns. Ulloa later told Cubillos that they were what he was seeking. Negotiations, including the type and quantity of machine guns desired by Ulloa, took place over the next few days; at one point, Ulloa requested 300 M-16s. It was agreed that, in exchange for five Mac-10 type machine guns, 48 to 50 M-16s, one Uzi, and eight Baretta 9mm pistols, Ulloa would provide $60,000 and two kilograms of cocaine.

In early August 1994, Ulloa delivered the $60,000 as a down payment; the next day, he and Leonardo Vasquez delivered the cocaine to Cubillos. The three then proceeded to a house, where Ulloa and Vasquez were shown the firearms; at one point, Ulloa held a Mac-10 type machine gun. After they had seen and handled the firearms, Ulloa and Vasquez were arrested.

## II.

The Supreme Court's recent decision in **Bailey**, __ U.S. __, 116 S. Ct. 501, was rendered after completion of briefing in this appeal. It involved two consolidated cases: in the first, a traffic offense stop was followed by an arrest after the police found cocaine inside the car and a firearm in a bag in the locked

truck; in the second, arrest occurred after the search of an apartment revealed crack cocaine and an unloaded, holstered firearm in a locked footlocker in a bedroom closet. Each conviction was under both prongs of § 924(c)(1) -- "use" and "carry". *Id*. at 503-04.

At issue in *Bailey* was "whether evidence of the proximity and accessibility of a firearm to drugs or drug proceeds is alone sufficient to support a [§ 924(c)(1)] conviction for 'use' of a firearm during and in relation to a drug trafficking offense". *Id*. at 503. As discussed more fully *infra*, the Court stated "that 'use' must connote more than mere possession of a firearm by a person who commits a drug offense", *id*. at 506, and held that, "[t]o sustain a conviction under the 'use' prong ... , the Government must show that the defendant *actively employed* the firearm during and in relation to the predicate crime", *id.* at 509 (emphasis added). Concluding that the evidence was insufficient to support the convictions under the "use" prong, the Court remanded for consideration of whether there was a basis for upholding them under the "carry" prong. *Id.*

At issue here is whether, under *Bailey*, Ulloa "used" the firearms by bartering drugs for them; in short, whether his actions constitute an offense proscribed by that prong of § 924(c)(1). (As discussed *infra*, Ulloa asserts that bartering, without more, is not "use".) In deciding whether *Bailey* changes the law in this circuit

4

established by *United States v. Zuniga*, 18 F.3d 1254 (5th Cir.), *cert. denied*, 115 S. Ct. 214 (1994) (bartering drugs for firearms is a § 924(c)(1) "use"), we must, as always, first determine the proper standard of review.

As noted, in the process of pleading guilty in district court, Ulloa did not assert that the factual basis did not satisfy the "use" prong. Restated, he raises this issue for the first time on appeal, complicating this initial task.

A.

The district court "should not enter a judgment upon [a guilty] plea without making such inquiry as shall satisfy it that there is a factual basis for the plea." FED. R. CRIM. P. 11(f). On the other hand, Rule 11(h) provides that "[a]ny variance from the procedures required by this rule which does not *affect substantial rights* shall be disregarded." (Emphasis added.)

Ulloa does not contest the findings of fact or other Rule 11 procedures followed, except on one point: "[w]hether the factual basis is sufficient to support ... conviction ... under ... 924(c)(1), where the Government rather than [Ulloa] used firearms as an instrument of barter in a drug trafficking crime." Ulloa presented this issue in his pre-*Bailey* opening brief, asserting that *Zuniga*, our bartering drugs for firearms precedent, was wrongly decided under *Smith v. United States*, 508 U.S. 223 (1993), and, alternatively, was distinguishable factually.

5

After the Government filed its brief, and the time for filing a reply had lapsed (one was not filed), *Bailey* was rendered.  Needless to say, it was the focal point at oral argument.  But, no authority need be cited for our rule that we generally will not consider points raised for the first time at argument.  And, obviously, in light of the emphasis he placed on *Bailey* at oral argument, Ulloa should have requested leave post-*Bailey* to file a supplemental brief.  In any event, we are considering the new points raised at oral argument, especially because of two opinions rendered by our court shortly before oral argument which concern pre-*Bailey* guilty pleas, as discussed *infra*.

In Ulloa's view, *Bailey* clarifies that a § 924(c)(1) "use" conviction requires not only "possession" by the defendant, but also "dominion and control" over the firearms, so that the defendant has an opportunity to put the weapons to some form of use, in order to satisfy *Bailey*'s requirement, 116 S. Ct. at 509, to "actively employ" them.  Here, unlike *Zuniga*, as discussed *infra*, the arrest came immediately after the weapons' delivery.  Accordingly, Ulloa continues to maintain that *Zuniga* is distinguishable factually, and maintains that *Bailey* mandates reversal.

In his brief, Ulloa urged that the standard of review was for harmless error under Rule 11(h); that we "must determine whether the failure to establish a

6

sufficient factual basis affected ... [Ulloa's] substantial rights...." The Government countered in its brief that, because this factual basis challenge was not raised in district court and was, instead, being raised for the first time on appeal, review should be under the strict plain error standard.

Consistent with the Rule 11(h) harmless error standard, which, obviously, is almost identical to that for Rule 52(a) ("Harmless Error"), Rule 52(b) ("Plain Error") is concerned only with "[p]lain errors or defects affecting substantial rights[; they] may be noticed although they were not brought to the attention of the court." Accordingly, review for plain error includes considering whether substantial rights are affected. In recent years, following the Supreme Court clarifying plain error review in *United States v. Olano*, 507 U.S. 725 (1993), our court has attempted to apply the plain error standard more consistently and uniformly. *See*, *e.g.*, *Douglass v. United States Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996) (en banc); *United States v. Calverley*, 37 F.3d 160 (5th Cir. 1994) (en banc), *cert. denied*, 115 S. Ct. 1266 (1995); *United States v. Rodriguez*, 15 F.3d 408 (5th Cir. 1994). As discussed in *Calverley*, when an issue is raised for the first time on appeal, we review only for plain error. 37 F.3d at 162.

*Calverley* describes the four criteria for finding such error: (1) there must be an error, i.e, a deviation from a legal rule, absent a valid *waiver*; (2) the error must

7

be plain, i.e., clear or obvious, and "'clear under current law' at the time of trial"; (3) the error must affect substantial rights, i.e., it must be prejudicial and affect the outcome of the proceedings; and (4) upon finding these elements, we have discretion to correct such *forfeited* errors if they "seriously affect the fairness, integrity, or public reputation of judicial proceedings". *Id.* at 163-64. (*United States v. McGuire*, 79 F.3d 1396 (5th Cir.), *reh'g en banc granted*, __ F.3d __, 1996 WL 408614 (5th Cir. 1996), concerns whether plain error analysis applies when a Supreme Court decision that changes the law is rendered during direct appeal so that the jury instructions at trial may be reversible error, and, if so, whether the "plainness" of that error is to be measured at the time of the trial or appeal. Because, as discussed *infra*, *Bailey* did not change the law as it applies to Ulloa, the case at hand does not present the issue to be addressed by our en banc court.)

Challenging for the first time on appeal the factual basis underlying a § 924(c)(1) guilty plea appears to be a recurring matter. It arose, for example, in *Zuniga*. The Supreme Court held in *Smith* that bartering firearms for drugs is a § 924(c)(1) "use". 508 U.S. at 241. *Smith* was rendered a few days before sentencing in *Zuniga*. For the first time on appeal, Zuniga challenged his guilty plea on the basis "that at the time of his conduct, bartering drugs for weapons did not constitute [§ 924(c)(1)] 'use'...." 18 F.3d at 1257. The Government countered

8

that he had "*waived* this issue because he did not raise it below in the context of his guilty plea." *Id*. at 1257-58 (emphasis added). Our court "[a]ssum[ed], arguendo, that we may properly review this contention", *id*. at 1258, noting that, "[a]lthough Zuniga did not challenge [the § 924(c)(1)] count ... on this ground, at his rearraignment, the district court [had] observed in passing that his offense conduct fell within the confines of section 924(c)(1) ...." *Id*. n.7.

*Zuniga* was decided before our *Calverley* en banc court, enlightened by *Olano*, clarified plain error review. Among other things, and as emphasized *supra*, *Calverley* discusses the difference between "waiver" (the term used in *Zuniga*, as quoted above) and "forfeiture"; the latter is one of the prerequisites for plain error, as also emphasized *supra*. *Calverley*, 37 F.3d at 162. The post-*Calverley* road toward consistent, uniform, and simplified application of plain error review, however, has not been without bumps and curves. As with any rule of law, new scenarios and questions arise, as reflected by our approaching en banc consideration in *McGuire*.

This is reflected also by the fact that, as noted, after *Bailey* was handed down, our court rendered two opinions within two weeks of each other, and only a few weeks before oral argument in this case, which seem to apply different standards of review for the factual basis challenge to a § 924(c)(1) plea as in issue here:

9

*United States v. Andrade*, 83 F.3d 729 (5th Cir. 1996), and *United States v. Rivas*, 85 F.3d 193 (5th Cir. 1996).

Each opinion concerns a pre-*Bailey* guilty plea, and each takes *Bailey* into consideration. On the one hand, *Andrade* addressed an instance "where intervening law has established that a defendant's actions do not constitute a crime and thus that the defendant is actually innocent of the charged offense" to which he pled guilty. *Andrade*, 83 F.3d at 731. On the other hand, *Rivas* speaks of "[t]he district court's acceptance of a guilty plea [being] considered a factual finding that there is an adequate basis for the plea.... [and w]e therefore review this finding for clear error." *Rivas*, 85 F.3d at 194. Various factors are at play in deciding which, if either, of the two standards apply here; in that regard, each opinion must be examined carefully.

Rivas had a pistol when arrested en route to inspect cocaine he had sold; in district court, he stated that the pistol was under his seat in the vehicle, but the Government claimed it was in his trousers. *Rivas*, 85 F.3d at 194. The pre-*Bailey* § 924(c)(1) guilty plea was under both prongs. *Id.* When the Government detailed the factual basis for it, Rivas registered his disagreement over the pistol's location; the district court responded that this disputed fact made no difference for purposes of the plea. *Id*.

10

On appeal, Rivas raised a factual basis challenge to the plea, contending that, under *Bailey*, he did not "use" the firearm because, premised on his district court assertion that the pistol was under his seat, it, accordingly, was not actively employed or an operative factor in the offense. *Id.* As noted, our court stated the following standard of review: "The district court's acceptance of a guilty plea is considered a factual finding that there is an adequate basis for the plea. We therefore review this finding for clear error." *Id.* at 194.

Our court noted that the district court was correct in stating pre-*Bailey* that, for conviction under either prong, it did not matter whether the gun was under Rivas' seat or in his trousers, and held that it was not necessary post-*Bailey* to decide the "use" prong issue because: (1) in any event, Rivas was also charged under the "carry" prong; (2) precedent for that prong was not affected by *Bailey*, which did not address it; (3) Rivas' challenge went only to the "use" prong; and (4) his factual objection in district court did not preclude finding that he carried the weapon for § 924(c)(1) purposes. *Id*. at 195-96. On review of the factual basis, our court held that it was sufficient to satisfy the "carry" prong. *Id.*

In sum, it may be that the *Rivas* clear error standard of review was not directed toward the "use" issue, but instead was directed toward the unchallenged "carry" prong; as to that prong, our court concluded that the relevant factual

11

findings were not clearly erroneous and constituted the charged offense. In other words, our court avoided the issue of law posed by the "use" prong challenge by being able to rest affirmance on the alternative, non-legal issue "carry" prong. There was no challenge to that part of the plea. Accordingly, it may be that our court's statement of the standard of review (clear error) was shaped by and directed toward the determinative factual issue as to the "carry" prong -- whether the relevant underlying findings were not clearly erroneous and thus adequate to sustain the plea. It goes without saying that the issue here is quite different; it is one of law, more similar to that posed in *Andrade*.

While searching Andrade's residence, the police found cocaine in a bedroom closet and a revolver under a mattress approximately seven feet away. *Andrade*, 83 F.3d at 730. Andrade pled guilty under the "use" prong; the "carry" prong was not involved. *Id.* Our court noted that, "[a]t the time of his [pre-*Bailey*] plea, these facts adequately supported a conviction [under the 'use' prong] for the firearm offense in this circuit." *Id*.

As in the case at hand, Andrade claimed on appeal that *Bailey* rendered the factual basis insufficient. *Id.* Our court agreed, holding that the basis established no more than mere possession. *Id.* at 730 & n.1.

As noted, for reviewing that basis, our court stated:

12

> A plea of guilty typically waives all non-jurisdictional defects in the proceedings below. Nonetheless, in this particular context, where intervening law has established that a defendant's actions do not constitute a crime and thus that the defendant is actually innocent of the charged offense, application of this rule is misplaced. We have previously permitted attacks on guilty pleas on the basis of intervening decisions modifying the substantive criminal law defining the offense.

*Id.* at 731 (citations omitted). Our court did not state the standard of review. But, it apparently utilized that for plain error. The most recent of several cases cited by *Andrade* for the intervening decision exception detailed above is *United States v. Knowles*, 29 F.3d 947, 950-51 (5th Cir. 1994), which applied the plain error standard.

*Knowles*, rendered after the Supreme Court's *Olano* opinion but before our *Calverley* en banc opinion, vacated a conviction for violation of a statute that our court had earlier held unconstitutional in another case after Knowles pled guilty. The *Knowles* court noted that, as here, before it could deal with the merits, it had to address Knowles' failure to raise in district court the issue presented on appeal. *Id*. at 950.

Because of that forfeiture, our court utilized the plain error standard of review and, in so doing, noted that "[i]t is self-evident that basing a conviction on an unconstitutional statute is both 'plain' and an 'error'." *Id.* at 951. Noting that

13

it was "also evident that this error affected the outcome of the proceedings" in district court, *id*., our court held that "failure to address Knowles's challenge to the constitutionality of the ... Act would seriously affect the fairness, integrity, and public reputation of judicial proceedings." *Id*. at 951-52. It reversed the conviction. *Id*. at 952.

*Andrade* involved an instance where "intervening law has established that a defendant's actions do not constitute a crime and thus that the defendant is actually innocent of the charged offense." *Andrade*, 83 F.2d at 731. In any event, it appears that it applied plain error review. It seems that, based on its facts and the change wrought by *Bailey*, *Andrade* conflated the steps for plain error review and granted relief. We need not be concerned further with this possibility, because, unlike *Andrade*, and as hereinafter discussed, the instant appeal does not present an issue that has arisen only because of an intervening decision.

The issue Ulloa presents now is the same as he presented to us before *Bailey*; it focuses in large part on a decision by our court -- *Zuniga* -- rendered approximately a year before his plea. And, unlike what appears to have been the basis for the clear error standard of review in *Rivas*, Ulloa does not present an issue for which we need be satisfied that findings of fact regarding the factual basis are not clearly erroneous. Instead, Ulloa presents a plain, straightforward issue of law:

14

is the undisputed factual basis sufficient as a matter of law to sustain his plea. This issue could, and should, have been presented in district court. Accordingly, we review only for plain error.

B.

Ulloa pled guilty and was sentenced in the Spring of 1995. Well in advance of his plea, our court held in *Zuniga* that bartering drugs for firearms constitutes an offense under § 924(c)(1). 18 F.3d at 1259. This notwithstanding, Ulloa challenges his conviction through the assertion that the Government, not he, used the firearms as an instrument of barter.

Under *Smith*, 508 U.S. at 241, "[b]oth a firearm's use as a weapon and its use as an item of barter fall within the plain language of § 924(c)(1), so long as the use occurs during and in relation to a drug trafficking offense". *Smith* held that a defendant trading his firearm for drugs "uses" it within the meaning of § 924(c)(1). *Id.* In *Zuniga*, as here, the defendant bartered drugs for firearms, but our court held that *Smith* was not "distinguishable on the basis that here the defendant owned the drugs and was bartering them for the firearms, while in *Smith* the defendant owned the firearm and was bartering it for the drugs." 18 F.3d at 1259.

It would seem that no more need be said; but, as noted, Ulloa maintains that *Smith* was overruled by *Bailey*, and that, accordingly, *Zuniga* was overruled as

15

well.  *Bailey* did not overrule *Smith*; to the contrary, the Court stated that *Bailey*

> is not inconsistent with *Smith*.  Although there we declined to limit "use" to the meaning "use as a weapon," our interpretation of § 924(c)(1) nonetheless adhered to an active meaning of the term.  In *Smith*, it was clear that the defendant had "used" the gun; the question was whether that particular use (bartering) came within the meaning of § 924(c)(1).

116 S. Ct. at 508.

> *Bailey* offers the following definitions for "use":

> The word "use" in the statute must be given its "ordinary or natural" meaning, a meaning variously defined as "[t]o convert to one's service," "to employ," "to avail oneself of," and "to carry out a purpose or action by means of."

*Id.* at 506.  Moreover, it enumerates bartering as a § 924(c)(1) "use": "The active-employment understanding of 'use' certainly includes brandishing, displaying, *bartering*, striking with, and most obviously, firing or attempting to fire, a firearm." *Id*. at 508 (emphasis added).

Still undaunted, Ulloa claims also that, although § 924(c)(1) does not expressly require the defendant to "possess" the firearm, *Bailey* requires "possession" plus an additional factor.  Along that line, he attempts to distinguish *Zuniga* from the case at hand through the claim that *Zuniga* also required this additional factor.

16

In *Zuniga*, after the drugs for firearms exchange, Zuniga placed the firearms in his automobile and, while they were in his "possession", departed *(but with the undercover agents in his vehicle)* to complete the transaction. 18 F.3d at 1257. Zuniga had bartered drugs not only for firearms, but also for money; the remaining detail was for him to obtain the latter. But, when he arrived, with the undercover agents, at the location for the money, he was arrested. *Id*.

To claim as Ulloa does that possession plus more was involved in *Zuniga*, that it turned on some form of hands-on use of the firearms by Zuniga, is simply incorrect. After the exchange, the weapons were with the undercover agents at all times; Zuniga never had the "dominion and control" over the firearms that Ulloa attributes to Zuniga's being around, or handling, them longer than Ulloa had occasion to do with the firearms he received in his barter.

In any event, Ulloa claims that he never "possessed" the firearms. We need not determine whether he did, because we conclude, as explained below, that possession is not required by *Bailey*. We conclude also that *Zuniga* remains controlling precedent.

It is true that *Bailey* held "that 'use' must connote more than mere possession of a firearm by a person who commits a drug offense", 116 S. Ct. at 506; but, this simply addresses the obvious fact that possession is not even necessarily part of the

17

mix. An offender can use a firearm without possessing it, as is made plain by the examples given in **Bailey** of what could constitute "use": "a reference to a firearm calculated to bring about a change in the circumstance of the predicate offence is a 'use,' just as the silent but obvious and forceful presence of a gun on a table can be a 'use.'" *Id.* at 508. Neither instance necessarily requires that the offender "possess" the firearm, however that term might be defined by Ulloa.

**Bailey** declares further:

> Under the interpretation we enunciate today, a firearm can be used without being carried, *e.g.*, when an offender has a gun on display during a transaction, or *barters with a firearm without handling it*; and a firearm can be carried without being used, *e.g.*, when an offender keeps a gun hidden in his clothing throughout a drug transaction.

*Id.* at 507 (emphasis added). Just as "a firearm can be used without being carried", as "when an offender ... barters with a firearm without handling it", so also, in a drugs-for-firearms barter, can it be "used" without being possessed and subsequently used or employed in some other fashion, as the above examples show.

We agree with the Government that, by bartering drugs for firearms, Ulloa "used" the firearms because, under one of **Bailey**'s definitions of "use", *id*. at 506, Ulloa "carr[ied] out a purpose or action by means of" them. **Bailey** holds that "§ 924(c)(1) requires evidence sufficient to show an *active employment* of the firearm

18

by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." *Id.* at 505 (emphasis added). By bartering drugs for firearms, Ulloa "actively employed" the firearms, because they were an "operative factor" in the drug trafficking offenses: Ulloa required that he be furnished firearms in exchange for his drugs. Ulloa thus "used" the firearms within the meaning of § 924(c)(1).

As stated, for the issue at hand, *Bailey* has not changed the law of this circuit; bartering drugs for firearms has long been an offense under § 924(c)(1), as held in April 1994 in *Zuniga*. Simply put, there has not been an "error"; Ulloa's claim does not even clear the first hurdle in our plain error analysis. Obviously, there was no plain error.

III.

For the foregoing reasons, the judgment is

***AFFIRMED***.

19

E. GRADY JOLLY, Circuit Judge, dissenting in part, concurring in result:

I concur in the result reached by Judge Barksdale but respectfully dissent from his analysis with respect to the standard of review. The question presented is whether Ulloa's contention that no offense was committed under 18 U.S.C. § 924(c)(1) may be raised for the first time on appeal. Judge Barksdale concludes that this challenge may not be reviewed absent a showing of plain error. I believe, however, that a defendant's contention that he committed no offense is a challenge to the jurisdiction of the sentencing court and, as with all jurisdictional defects, may be raised at any time.

I recognize that in many--if not most--cases challenging the sufficiency of the facts upon which a conviction rests, the standard of review used by this court is somewhat an abstract question that may be of little practical consequence; that is, the result will be the same under either standard. In cases such as this one, however, where a defendant contends that intervening

law establishes that his actions do not constitute a crime, the standard of review that we apply can be of enormous consequence. To review for plain error, as Judge Barksdale insists, would render many challenges unreviewable. This is so because a finding of plain error requires that

> (1) there must be an error, i.e., a deviation from a legal rule, absent a valid waiver;
> (2) the error must be plain, i.e., clear or obvious, and "'clear under current law' at the time of trial";
> (3) the error must affect substantial rights, i.e., it must be prejudicial and affect the outcome of the proceedings; and
> (4) the errors "seriously affect the fairness, integrity, or public reputation of judicial proceedings."

Op. at 7 (citing U.S. v. Calverly, 37 F.3d 160, 163-64 (5th Cir. 1994) (en banc)). Clearly, where intervening law establishes that a defendant's actions do not constitute a crime, a defendant restricted to plain error review will be unable to demonstrate that the error was "`clear under current law' at the time of the trial."[1]

---

[1]The majority correctly notes that plain error review was used in United States v. Knowles, 29 F.3d 947 (5th Cir. 1994). Notably, the panel in Knowles applied a pre-Calverly

Confining our review to plain error, thus, would leave this court powerless to correct a jurisdictional defect that goes "to the very power of the State to bring the defendant into court to answer the charges brought against him." Blackledge v. Perry, 417 U.S. 21, 30, 94 S.Ct. 2098, 2103 (1974).

We have long held that a claim that an indictment fails to allege an offense is a challenge to the jurisdiction of the convicting court and is not waived by a guilty plea. See United States v. Osiemi, 980 F.2d 344, 345 (5th Cir. 1993); United States v. Rivera, 879 F.2d 1247, 1251, n.3 (5th Cir.), cert. denied, 493 U.S. 998, 110 S.Ct. 554 (1989); United States v. Edrington, 726 F.2d 1029, 1031 (5th Cir. 1984); United States v. Lopez, 704 F.2d 1382, 1385 (5th Cir. 1983); United States v. Meacham, 626 F.2d 503, 510 (5th Cir. 1980). Accordingly, we have permitted defendants on direct appeal to raise an objection that the indictment fails to

test for plain error and thus did not confront the potential for non-reviewability that the Calverly test poses.

state an offense even though the defendant failed to object at the trial level.  See United States v. Tashnizi, 687 F.2d 50 (5th Cir. 1982); United States v. Varkonyi, 645 F.2d 453, 455 (5th Cir. 1981).  Similarly, we have permitted such challenges to be raised for the first time in a petition for habeas corpus "because such an error divests the sentencing court of jurisdiction." United States v. Osiemi, 980 F.2d 344, 345 (5th Cir. 1993).  See also United States v. Harper, 901 F.2d 471, 472 (5th Cir.), reh'g denied, en banc 907 F.2d 146 (1990); United States v. Prince, 868 F.2d 1379, cert. denied, __ U.S. __, 110 S.Ct. 321 (1989).  We have done so for the well-established reason that "a plea of guilty to a charge does not waive a claim that--judged on its face--the charge is one which the State may not constitutionally prosecute." Menna v. New York, 423 U.S. 61, 62-63 n.2, 96 S.Ct. 241, 242 n.2 (1975).  See also United States v. Knowles, 29 F.3d 947, 952 (5th Cir. 1994).

At bottom, then, this is a question not of procedural default, but of jurisdiction--the power to convict a criminal defendant and send him to jail. We have such power by virtue of the statutes under which a defendant is being prosecuted. Where a defendant contends that intervening law establishes that his conduct is not punishable under the relevant statute, we are obligated independently to establish our jurisdiction over the defendant. Moreover, as the dissent points out, to deny a criminal defendant the benefit of changes in the substantive criminal law defining the offense for which he has been convicted, simply because "he failed to make a futile and probably frivolous objection, does not accord with basic fairness." Dissent at 2 (citing United States v. McGuire, 79 F.3d 1396, 1402 (5th Cir. 1996).

Although the standard of review will be of critical practical importance in cases where we agree with the defendant that intervening law establishes that his conduct falls outside the scope of the statute, in this

case it is not. For the reasons stated in Judge Barksdale's opinion, Ulloa "used" a firearm within the meaning of § 924(c)(1) and <u>United States v. Bailey</u>. I thus dissent from the standard of review applied, but concur in the result reached.

POLITZ, Chief Judge, dissenting:

I do not agree with the majority's holding that the appropriate standard of review in this case is plain error. We review here a guilty plea. Whether a factual basis for the plea exists is viewed under the clearly erroneous standard[2] and must be determined in light of the law applicable at the time of the appeal.[3] For the reasons outlined in **Briggs** our review should focus on and be limited to the validity of the guilty plea.[4] Therefore I must conclude that the majority's analysis is

---

[2]**United States v. Briggs**, 920 F.2d 287 (5th Cir. 1991). <u>See</u> <u>also</u> **United States v. Oberski**, 734 F.2d 1030, 1031 (5th Cir. 1984) (citations omitted) ("[t]his factual basis must appear in the record and must be sufficiently specific to allow the court to determine that the defendant's conduct was within the ambit of that defined as criminal"). When a challenge to the factual basis of a guilty plea is made via a motion to withdraw that plea, the proper standard of review is abuse of discretion. **United States v. Moore**, 37 F.3d 169 (5th Cir. 1994).

[3]**Griffith v. Kentucky**, 479 U.S. 314, 322 (1987) ("failure to apply a newly declared constitutional rule to criminal cases pending on direct review violates basic norms of constitutional adjudication").

[4]**Briggs**; **Brooks v. United States**, 424 F.2d 425 (5th Cir. 1970). The appropriate remedy for an insufficient factual basis is to vacate the plea and remand for further proceedings. **Briggs**.

mistaken and improvident.

I reject out-of-hand the proposition, latent in the majority opinion, that this court may ignore the plight of one who is being punished for actions the highest court in this land have determined <u>are not criminal</u>.[5]  We previously have stated that "[t]o deny a criminal defendant the benefit of a rule that clearly departed from well-settled law to the contrary, merely on the basis that he failed to make a futile and probably frivolous objection, does not accord with basic fairness."[6]  To now declare that this court may recognize a fundamental unfairness but opt to essentially ignore it renders a manifest injustice truly opprobrious.

I disagree with the majority on the merits of this appeal.  **Bailey** clearly requires "active employment" of the firearm.  In the case at bar, however, the firearm was exclusively the passive object of Ulloa's actions.  It cannot be gainsaid

---

[5]This follows from a misapplication of the fourth of the **Calverley** factors, *i.e.*, "upon a finding of [plain error] we have discretion to correct such <u>forfeited</u> errors if they 'seriously affect the fairness, integrity, or public reputation of judicial proceedings.'"  Manuscript at 7 (emphasis in original), <u>quoting</u> **United States v. Calverley**, 37 F.3d 160, 163-164 (5th Cir. 1996) (*en banc*).

[6]**United States v. McGuire**, 79 F.3d 1396, 1402 (5th Cir. 1996).  <u>See</u> <u>also</u> **United States v. Marcello**, 876 F.2d 1147 (5th Cir. 1989); **United States v. Huls**, 841 F.2d 109 (5th Cir. 1988).

that one may "use" a firearm without "possessing" it at the moment of use, but I am persuaded beyond peradventure that there must be some showing that the defendant exercised actual dominion over or otherwise meaningfully manipulated the weapon.  Absent such a showing, there is nothing more than a firearm present at a transaction involving illegal drugs, a circumstance that, without more, does not state an offense under section 924(C)(1).[7]  I perceive a meaningful difference between bartering "with a firearm," which **Bailey** and **Smith** expressly place within the ambit of section 924(c)(1), and bartering "for a firearm," as is the situation presented herein.

I dissent.

---

[7]See **United States v. Camacho**, 86 F.3d 394 (5th Cir. 1996); **United States v. Fike**, 82 F.3d 1315 (5th Cir. 1996); **United States v. Wilson**, 77 F.3d 105 (5th Cir. 1996).