**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                        No. 95-5481

JEFFREY BLAKE JOHNSON,
Defendant-Appellant.

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                        No. 95-5482

ROBERT LEE BRUCE, JR.,
Defendant-Appellant.

Appeals from the United States District Court
for the Western District of Virginia, at Charlottesville.
Glen M. Williams, Senior District Judge.
(CR-94-61)

Argued: December 6, 1996

Decided: February 12, 1997

Before WILKINSON, Chief Judge, LUTTIG, Circuit Judge, and
DAVIS, United States District Judge for the District of Maryland,
sitting by designation.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Frederick Theodore Heblich, Jr., PARKER, MCELWAIN & JACOBS, P.C., Charlottesville, Virginia, for Appellant Johnson; Richard Andrew Davis, Charlottesville, Virginia, for Appellant Bruce. Donald Ray Wolthuis, Assistant United States Attorney, Roanoke, Virginia, for Appellee. **ON BRIEF:** Robert P. Crouch, Jr., United States Attorney, Roanoke, Virginia, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Appellants Robert Lee Bruce, Jr. and Jeffrey Blake Johnson were indicted for their participation in a drug conspiracy that operated in the Harrisonburg, Virginia area. The indictment alleged that Bruce was the principal and Johnson was a lieutenant in the conspiracy. Bruce was charged with one count of drug conspiracy, nine drug distribution counts, the use of a firearm in connection with a drug offense under 18 U.S.C. § 924(c)(1), being a felon in possession of a firearm under 18 U.S.C. § 922(g)(1), and attempting to escape from custody. Johnson was charged with one count of drug conspiracy and three drug distribution counts.

The drug charges were supported by the testimony of more than half a dozen witnesses who were involved with the defendants in crack cocaine distribution and by surveillance evidence of controlled buys of crack cocaine through the use of a confidential informant. The firearms counts against Bruce arose from a reverse sting operation in which Bruce attempted to use cash and cocaine to purchase an automatic M-16 rifle in a hotel room.

Bruce and Johnson were tried before a jury and convicted on all counts. Bruce was sentenced to life in prison, plus a consecutive term

2

of 30 years for the section 924(c) conviction. Johnson was sentenced to 360 months in prison.

Appellants challenge these convictions on numerous grounds.

I.

Appellants first argue that the government failed to make adequate disclosure of exculpatory evidence as required by Brady v. Maryland, 373 U.S. 83 (1963). A week before the trial, the government learned that its confidential informant for the controlled crack cocaine purchases, Dewayne Lingenfelter, had on two occasions falsely implicated Bruce as being involved in drug transactions and had used crack cocaine during the time frame of the investigation. J.A. at 293-95. The government disclosed this information to defense counsel, notified the jury of it during the government's opening statement, and even warned the jury to "think of [Lingenfelter] as the man that if you asked if it was sunny outside, that you best go look out the window yourself . . . there best be some corroboration for what he tells you." J.A. at 91.

Following completion of the trial, defense counsel obtained information that Lingenfelter had pleaded guilty to a charge of making a false report to police in violation of Virginia Code§ 18.2-461 for false denial of his involvement in an unwitnessed single car accident. J.A. at 60-61. The government was unaware of this conviction because the records of it were in the General District Court for the City of Staunton, whereas the conspiracy activity at issue in the case sub judice took place in Harrisonburg. After the trial but prior to sentencing, Johnson and Bruce moved to dismiss the indictments, or in the alternative for a new trial, because of the new information regarding Lingenfelter. The district court rejected the motion, stating that

> the Government furnished every bit of information it had. And this was something that, for whatever failure, did not get to the NCIC to be picked up. And whatever it was, it was available equally to both sides . . . . With all of the massive testimony impeaching this man . . . [disclosure of the prior offense] would have been of such minor significance

3

that I don't think it would have changed the result of this case.

Supp. J.A. at 27-28. The information, which was unknown to the government and was kept in records located in another jurisdiction, was not within the obligation of the government to discover. United States v. Meros, 866 F.2d 1304, 1308 (11th Cir. 1989) ("A prosecutor has no duty to undertake a fishing expedition in other jurisdictions in an effort to find potentially impeaching evidence every time a criminal defendant makes a Brady request for information regarding a government witness."). Furthermore, given the government's extensive disclosure to the defense and to the jury regarding Lingenfelter's credibility, the information regarding the unwitnessed single car accident does not even arguably create a "reasonable probability" that the result of the proceeding would have been different with disclosure, nor does it "undermine[ ] confidence in the outcome of the trial." United States v. Bagley, 473 U.S. 667, 678, 682 (1985).

II.

Appellants next argue that the district court's calculation of drug weights was clearly erroneous. We disagree. The district court's findings that Bruce was responsible for 6.63 kilograms of cocaine and that Johnson was responsible for more than one kilogram of cocaine are more than adequately supported by evidence in the presentence report adopted by the district court. The calculation for Johnson was supported by the statements of codefendants Benny Paul and Helen Harrison, who testified to having seen Johnson possess and sell cocaine. Paul estimated the amount at one kilogram. J.A. at 759. Harrison stated that she saw Johnson and another individual with large plastic bags of crack cocaine covering a six-foot long table and "stated she could not even see the tabletop and that the crack cocaine bags were piled up on one another." J.A. at 761. Regarding Bruce, the presentence report states that "[u]nrefuted evidence" shows that the group headed by Bruce distributed "no less than 6.63 kilograms of cocaine base," J.A. at 824, and Bruce offers no evidence to the contrary. Under such circumstances, the district court's reliance on the presentencing report was not clearly erroneous.

4

III.

Appellants next argue that the district court erred in approving a three-point upward adjustment for Johnson's role in the offense and a four-point upward adjustment for Bruce's role. Again we review for clear error and find no error.

Johnson objects to the three-point enhancement for his role as a "manager or supervisor" of the criminal activity under U.S.S.G. § 3B1.1(b). The presentence report states that "[e]vidence indicates Johnson acted as a supervisor for Bruce, overseeing the distribution of cocaine base." J.A. at 804. Bruce's supervisory role is supported by Harrison's testimony that she, Annette McCarthy, and Mervin "Sonny" Jones sold cocaine for Johnson at his direction. J.A. at 760-61, 803.

Johnson argues for the first time on appeal that he should have received at most a two point enhancement because the presentence report cites U.S.S.G. § 3B1.1(c), which provides for a two point enhancement, rather than subsection (b), which provides for a three point enhancement. However, the citation of subsection (c) in the pre-sentence report is evidently nothing more than a clerical error, and the sentencing hearing makes clear that Johnson, the prosecution, and the court were aware that the presentence report called for a three point enhancement. J.A. at 772, 776. In fact, Johnson's written objection to the presentence report refers to the "three-point upward adjustment," and the "Addendum to the Presentence Report" correctly cites U.S.S.G. § 3B1.1(b). J.A. at 814, 817.

Bruce's argument that he was not an "organizer or leader" of the criminal activity under U.S.S.G. § 3B1.1(a) is particularly far-fetched. Considerable trial testimony established that Bruce was the leader of an extensive organization that made weekly trips to the Washington, D.C., area to obtain cocaine and cocaine base. See, e.g., 678-82. For example, Tracy Johnson testified that Bruce employed her as a runner and that Bruce delivered crack cocaine to Jeffrey Johnson and directed him to resell it. J.A. at 595, 598. Additionally, Bruce directed security efforts, including strip searches and the posting of lookouts. See, e.g., J.A. at 433, 488, 657-58, 761.

5

IV.

Johnson and Bruce challenge the sufficiency of the evidence for the jury's verdict on the conspiracy and substantive drug distribution counts. However, a rational trier of fact could easily find Johnson and Bruce guilty beyond a reasonable doubt on these charges. The conspiracy charge was proven by, among other things, the cooking of cocaine in Helen Harrison's kitchen. Johnson cooked powder cocaine into crack while Bruce, as discussed above, sat at the kitchen table surrounded by bags of cocaine and crack cocaine. J.A. at 477-82. This is further supported by the evidence, discussed above, regarding Johnson's role as a "manager or supervisor" in the drug-distribution organization and Bruce's role as its "organizer or leader." Appellants' only argument regarding the sufficiency of the evidence for the substantive drug distribution convictions is that the testimony of Lingenfelter and Tracy Johnson was inherently unreliable. However,"[t]he credibility of witnesses is a matter solely within the provence of the jury, and is not reviewable by this court." Pigford v. United States, 518 F.2d 831, 836 (4th Cir. 1975).

V.

Bruce also challenges his 18 U.S.C. § 924(c) conviction, arguing that there was insufficient evidence to prove either that he "use[d] or carrie[d]" a firearm or that he did so "during and in relation to" a drug trafficking crime. The § 924(c) conviction arose from a videotaped incident in which Bruce offered to exchange drugs and money for a machine-gun. Confidential informant David L. Hines testified that he met Bruce in a hotel room, where Bruce searched the room, covered the smoke detector, and strip searched Hines. J.A. at 431-33. In the course of negotiating with Hines regarding the amount of money and drugs he would give for the gun, Bruce picked up and examined the M-16 using a bedsheet. J.A. at 433-34. Bruce and Hines then moved out to the parking lot, where Bruce showed Hines cocaine and crack cocaine together with a Tech-9 firearm in his car. J.A. at 436-42. Bruce told Hines, "I've got the dope and I've got the cash, now, you bring the gun out here and we can do a deal." J.A. at 436. Negotiations broke off without completion of the transaction.

Under our circuit's precedent, the exchange of drugs for a firearm constitutes "use" of the firearm under § 924(c)(1). United States v.

6

Harris, 39 F.3d 1262, 1269 (4th Cir. 1994); see also United States v. Zuniga, 18 F.3d 1254, 1259 (5th Cir. 1994) (same). In a case not cited by either Bruce or the United States, defendant Reginald Boone gave Napoleon Yarn money and drugs in payment for Yarn to procure a shotgun for Boone. Harris, 39 F.3d at 1269. We held that this exchange or barter of cocaine for the mere "service" of obtaining a shotgun was sufficient for § 924(c) purposes, id., and we subsequently held that the validity of Boone's conviction was unaffected by the Supreme Court's decision in Bailey v. United States, 116 S. Ct. 501 (1995). United States v. Boone, No. 95-5055 (4th Cir., Aug. 16, 1996) (unpublished); see also United States v. Ulloa, 94 F.3d 949, 956 (5th Cir. 1996) (reaffirming Zuniga, supra, in light of Bailey).

The evidence supporting the § 924(c) conviction is considerably stronger here than in Harris, because Bruce negotiated directly with the possessor of the gun, rather than through a middle-man, and because Bruce physically handled the gun for valuation purposes in the course of negotiating over the drugs-for-gun exchange. According to the Supreme Court, a gun can be "used" as "an item of barter" even if the proposed drug transaction is not consummated. Smith v. United States, 508 U.S. 223, 226, 229 (1993) (holding that the proposed exchange of a gun for narcotics constitutes "use" under § 924(c)). Therefore, under all of the circumstances, Bruce "used" the firearm under § 924(c).

There can be no doubt that this use was "during and in relation to" the predicate drug trafficking offenses of possession of cocaine with intent to distribute and the ongoing conspiracy to possess with intent to distribute crack cocaine. Given our circuit precedent, we have little trouble deciding that Bruce "used" a firearm "during and in relation to" a drug trafficking offense.

VI.

The district court clearly did not commit reversible error in questioning prosecution witness Benny Paul in front of the jury regarding Paul's concerns about being jailed with Bruce. The district court's alleged error occurred in response to Paul's testimony that he was afraid of Bruce, J.A. at 557-61, and that Bruce made statements about finding out who were the "snitches," J.A. at 561. The district court,

7

however, merely asked Paul whether he wanted to be moved from the Orange County Jail, and Paul responded "I would like to be moved." J.A. at 561. Although Bruce did not object to this question during the trial, he now argues on appeal that the district court's question constituted an impermissible comment on the evidence.

The essence of Bruce's challenge is that the court's question could leave the jury with the impression that the court believed Paul's testimony. However, the court's concern for Paul's safety in no way indicates that the court considered Paul's testimony credible. Rather, the court most likely was concerned that the mere fact that Paul testified that he had seen Bruce with crack cocaine, had seen him involved in a shoot-out, and had seen him with weapons on many occasions, could jeopardize Paul's safety, regardless of whether the court found any of Paul's testimony to be credible. Furthermore, there is no reason to believe that the court's question regarding whether Paul wished to be transferred to another jail in any way prejudiced Bruce.

VII.

Bruce argues for the first time on appeal that the government engaged in sentencing entrapment or sentencing manipulation by allegedly introducing narcotics into the negotiations over the sale of the gun to Bruce in order to obtain the 18 U.S.C.§ 924(c) conviction and thereby enhance Bruce's sentence. However, drugs were not injected into the deal merely for sentencing purposes, as Bruce alleges: The drugs were at the core of the deal. Furthermore, Bruce's predisposition toward the use of drugs for the procurement of the gun is evidenced by Willie Scott's testimony that Bruce told him prior to the meeting at the hotel that he intended to trade drugs or money for the gun, J.A. at 689, and by the fact that Bruce brought drugs to the motel and displayed them to the informant in the parking lot.

VIII.

Finally, appellants have failed to establish that the district court abused its discretion by allowing the introduction of testimony regarding drug involvement and firearms not mentioned in the indictment.

8

Appellants first assert that evidence of a shoot-out on Kelly Street was extrinsic evidence. This evidence, however, to which there was no objection at trial, is clearly relevant to the conspiracy charge. Benny Paul and Cory Dark testified that the shootout was part of a competition between drug distribution organizations. J.A. at 531-34, 573-74. Furthermore, the conspiracy indictment alleged that "[m]embers of the conspiracy were involved in several shootings during the course of the conspiracy, to settle disputes with rival crack dealers, and to settle disputes within the conspiracy itself." J.A. at 24.

Second, Bruce asserts that Lingenfelter testified that he purchased cocaine from Bruce prior to the start of the conspiracy. However, Lingenfelter's testimony regarding his purchases from Bruce on "[s]everal occasions" prior to becoming an informant for the police in no way establishes that these purchases were prior to the start of the conspiracy. J.A. at 313.

Third, appellants object for the first time on appeal to the testimony of Tracy Johnson regarding her drug involvement with Bruce during the 1980s. However, the prosecution specifically asked Johnson about her drug dealings with Bruce during 1993-1994, the time of the charged conspiracy. J.A. at 594. Johnson's statement that she "knew Rob back in the '80s" is neither evidence of prior acts nor prejudicial to Bruce. J.A. at 595.

Fourth, appellants allege that trial testimony referred to firearms that were used, carried and displayed during the conspiracy but that were not specifically mentioned in the indictments. These guns, though not themselves mentioned in the indictment, were part of the conspiracy conduct charged in the indictment.

CONCLUSION

For the reasons stated herein, we affirm the judgment of the district court.

AFFIRMED

9