UNITED STATES of America,
Appellee,

v.

Maurice Leo STEWART, Appellant.

No. 00–3033.

United States Court of Appeals,
District of Columbia Circuit.

Argued Feb. 16, 2001.

Decided May 1, 2001.

Sandra G. Roland, Assistant Federal Public Defender, argued the cause for appellant. With her on the briefs was A. J. Kramer, Federal Public Defender. Jennifer M. Blunt, Assistant Federal Public Defender, entered an appearance.

Mary B. McCord, Assistant U.S. Attorney, argued the cause for appellee. With her on the brief were Wilma A. Lewis, U.S. Attorney, at the time the brief was filed, John R. Fisher and Mary-Patrice Brown, Assistant U.S. Attorneys.

Before: WILLIAMS, SENTELLE and ROGERS, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

Appellant Maurice Leo Stewart pleaded guilty to conspiring to distribute fifty or more grams of cocaine base, *see* 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(iii), 846, and conspiring to obtain firearms during and in relation to a drug trafficking offense, *see* 18 U.S.C. §§ 371, 924(c). In light of the Supreme Court's decision in *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), Stewart filed a collateral review motion challenging his

conviction on the ground that his receipt of firearms was not a "use" under 18 U.S.C. § 924(c). The district court denied Stewart's motion, holding that a person who receives a gun in exchange for drugs "uses" the gun within § 924(c)'s meaning. For the reasons set forth below, we reverse and remand.

## I. BACKGROUND

In the Spring of 1991, Maurice Stewart, Richard Shorter, and Damon Edwards sold crack cocaine to undercover police officers on a number of occasions. During one of those sales, Stewart and Shorter asked the officers about their plans for the weekend. When the officers told the suspects that they were "running guns," Stewart asked if he "could also get him an AK–47." One of the officers said that he would have to check with his cousin, who actually ran the guns.

Several weeks later, during another drug sale, Stewart and Shorter "again brought up the possible purchase of the guns," asking the officers if they could buy two nine-millimeter guns for $500. Over the next week, the defendants finalized a deal with the officers. On May 10, Stewart and Shorter accompanied the officers to a house in Northwest Washington, D.C., where the officers gave Gary Stewart, another of Maurice Stewart's co-conspirators, $7,000 in exchange for 250 grams of crack. At the time, the officers also agreed to give Maurice Stewart and the others a bag of guns as part of the transaction. Maurice Stewart and Shorter then accompanied the officers to another location, where the officers gave the guns to Stewart. Immediately, Stewart and Shorter were arrested. *See United States v. (Gary) Stewart,* 104 F.3d 1377, 1380 (D.C.Cir.1997).

After a grand jury issued a seventeen count indictment against Stewart and his

three co-conspirators, Stewart pleaded guilty to two counts: (1) conspiracy to distribute fifty or more grams of cocaine base, *see* 21 U.S.C. §§ 841(a)(1), 841(b)(a)(A)(iii), 846, and (2) conspiracy to obtain one or more firearms during and in relation to a drug trafficking crime, *see* 18 U.S.C. §§ 371, 924(c). The district court sentenced Stewart to 188 months imprisonment on the first count and 60 months imprisonment on the second count. The court ordered that the two sentences be served concurrently and followed by five years of supervised release. On direct appeal, this Court affirmed Stewart's sentence. *See United States v. (Maurice) Stewart,* 36 F.3d 127 (D.C.Cir.1994) (unpublished table decision).

Following the Supreme Court's decision in *Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995), .Stewart filed a collateral review motion under 28 U.S.C. § 2255 challenging his conviction on the ground that his passive receipt of the guns was not a "use" under 18 U.S.C. § 924(c). The district court denied this motion, holding that "selling drugs in exchange for guns clearly constitutes 'use' within the meaning of § 924(c)." *United States v. Stewart,* Crim. No. 91–593, mem. at 4 (D.D.C. Mar. 10, 2000). Stewart appeals from that decision.

## II. ANALYSIS

By failing to challenge the validity of his plea in his direct appeal, Stewart procedurally defaulted the claim he now makes. *See Bousley v. United States,* 523 U.S. 614, 622, 118 S.Ct. 1604, 140 L.Ed.2d 828 (1998). Stewart can raise his claim on collateral review only if he "can first demonstrate either cause and actual prejudice or that he is actually innocent." *Id.* (citations and internal quotations omitted).[1]

---

1. Although the motion we review in this case is Stewart's second motion for collateral re-

view, the limitations established by the Anti-

We begin by noting that the district court did not consider whether Stewart's procedural default could be excused. Rather, it held that Stewart was not entitled to relief because his claim was "meritless." *Stewart*, mem. at 3. We therefore limit our review to the legal question presented in Stewart's habeas corpus motion, setting aside the questions of whether his procedural default may be excused and whether Stewart should ultimately obtain relief.

At the time of Stewart's arrest, 18 U.S.C. § 924(c)(1) provided: "Whoever, during and in relation to any ... drug trafficking crime ... uses or carries a firearm, shall, in addition to the punishment provided for such crime ..., be sentenced to imprisonment for five years." Several months after Stewart pleaded guilty, this Court issued its decision in *United States v. Harris*, 959 F.2d 246 (D.C.Cir.1992) (per curiam). The *Harris* defendants had been convicted of violating § 924(c)(1) by receiving guns in exchange for drugs. The defendants appealed their convictions, arguing that the guns were not used "in relation to" a drug crime because they were used as "a medium of exchange in a trade for drugs and not as offensive or defensive weapons." *Id.* at 261. We rejected this argument and held that § 924(c) "requires no more than that the guns facilitate the predicate offense in some way." *Id.* Specifically, we explained that "this requirement is met '[i]f the firearm is within the possession or control of a person who commits an underlying crime ..., and the circumstances of the case show that the firearm facilitated or had a role in the crime.'" *Id.* (quoting *United States v. (Richard) Stewart*, 779 F.2d 538, 540 (9th Cir.1985)). We concluded that "once the [firearm] passed into appellants'

hands the facilitative nexus was satisfied." *Id.*

The following year, in *Smith v. United States*, 508 U.S. 223, 113 S.Ct. 2050, 124 L.Ed.2d 138 (1993), the Supreme Court upheld the conviction of a defendant who had traded a gun for drugs. *Id.* at 225, 113 S.Ct. 2050. The *Smith* Court held that "one who transports, exports, sells, or trades a firearm 'uses' it" in violation of § 924(c)(1). *Id.* at 234–35, 113 S.Ct. 2050. In arriving at this holding, the Court described a number of different "everyday meaning[s]" for "use," including: "to employ," "to avail oneself of," and "to derive service from." *Id.* at 228–29, 113 S.Ct. 2050 (internal quotes omitted). In light of these definitions, the Court explained that the *Smith* defendant· had used a gun as "an item of barter ... to bring him the very drugs he sought." *Id.* at 229, 113 S.Ct. 2050. Echoing our decision in *Harris*, the Court noted that "the gun at least must 'facilitat[e], or ha[ve] the potential of facilitating,' the drug trafficking offense." *Id.* at 238, 113 S.Ct. 2050 (quoting *(Richard) Stewart*, 779 F.2d at 540).

Two years later, the Supreme Court issued its *Bailey* decision, which "clarif[ied] the meaning of 'use' under § 924(c)(1)." 516 U.S. at 142, 116 S.Ct. 501. In *Bailey*, the Court held that "§ 924(c)(1) requires evidence sufficient to show an *active employment* of the firearm by the defendant, a use that makes the firearm an operative factor in relation to the predicate offense." *Id.* at 143, 116 S.Ct. 501. In its discussion, the Court again emphasized that "use" should be "given its 'ordinary and natural' meaning." *Id.* at 145, 116 S.Ct. 501 (quoting *Smith*, 508 U.S. at 228, 113 S.Ct. 2050). Distinguishing between the terms "use" and "carry" in § 924(c)(1), the Court ex-

---

terrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104–132, § 105, 110 Stat. 1214, 1220, do not apply because Stewart

filed the present motion two days before the Act's effective date.

plained that "a firearm can be used without being carried, *e.g.*, when an offender ... barters with a firearm without handling it." *Id.* at 146, 116 S.Ct. 501. The Court underscored that its decision "is not inconsistent with *Smith*," explicitly recognizing that the "active-employment understanding of 'use' certainly includes ... bartering." *Id.* at 148, 116 S.Ct. 501.

In *Bailey*'s wake, five of our sister circuits have considered whether a person who receives a gun in exchange for drugs "uses" the gun within the meaning of § 924(c). Three of those circuits have held that a receiving defendant uses the gun, *see United States v. Ramirez–Rangel,* 103 F.3d 1501, 1506 (9th Cir.1997); *United States v. Ulloa,* 94 F.3d 949, 956 (5th Cir. 1996); *United States v. Cannon,* 88 F.3d 1495, 1509 (8th Cir.1996), while two have held that he does not, *see United States v. Warwick,* 167 F.3d 965, 975–76 (6th Cir. 1999); *United States v. Westmoreland,* 122 F.3d 431, 435 (7th Cir.1997).

■ Consistent with the "ordinary meaning" approach employed by the Supreme Court in *Smith* and *Bailey,* we cannot see how a defendant "uses" a gun when he receives it during a drug transaction. The recipient has not employed the gun, availed himself of the gun, or derived any service from the gun by simply trading his drugs for it. *Cf. Smith,* 508 U.S. at 229, 113 S.Ct. 2050. Indeed, nothing in a person's acceptance of a gun embodies the active employment demanded by the Court in *Bailey. See* 516 U.S. at 142, 116 S.Ct. 501. We therefore agree with the Sixth and Seventh Circuits that a person who receives a gun in a trade for drugs has not used the gun in violation of § 924(c).

As the Seventh Circuit succinctly stated in *United States v. Westmoreland,* "there is no grammatically correct way to express that a person receiving a payment is thereby 'using' the payment." 122 F.3d at 435. Quite simply, a "seller does not 'use' a

buyer's consideration." *Id.* at 436. For example, when a person pays a cashier a dollar for a cup of coffee in the courthouse cafeteria, the customer has not used the coffee. He has only used the dollar bill. We see no difference when a person pays for a gun with drugs.

In response to Stewart's motion, the Government contends that *Harris* is still the law of this Circuit. This contention is based on the Supreme Court's statement that our *Harris* decision came to the "same conclusion" as the Eleventh Circuit decision the Court affirmed in *Smith.* 508 U.S. at 227, 113 S.Ct. 2050. While the Government's suggestion may be alluring, the interpretation of "use" we employed in *Harris* does not survive after *Bailey.*

In making this argument, the Government essentially asks us to interpret *Smith* more broadly than the Court itself did in *Bailey.* The *Bailey* Court carefully noted that its holding was "not inconsistent" with the interpretation it announced in *Smith.* 516 U.S. at 148, 116 S.Ct. 501. The Court, however, explained that the *Smith* decision addressed only "whether that *particular use* (bartering) came within the meaning of § 924(c)(1)." *Id.* (emphasis added). Indeed, the *Smith* Court only "conclude[d] that *using a firearm in a guns-for-drugs* trade may constitute 'us[ing] a firearm' within the meaning of § 924(c)(1)." 508 U.S. at 237, 113 S.Ct. 2050 (emphasis added). The *Bailey* Court explained that this conclusion "adhered to an active meaning" of the word "use" because "it was clear that the defendant had 'used' the gun." 516 U.S. at 148, 116 S.Ct. 501. In fact, the *Smith* Court made clear that the defendant had " 'used' his MAC–10 in an attempt to obtain drugs by offering to trade it for cocaine." 508 U.S. at 228, 113 S.Ct. 2050. There is no similar way to say that the recipient of a gun has "used" the gun when he offers to trade his

drugs for it. Neither *Smith* nor *Bailey* concluded that receiving a firearm in a *drugs-for-guns* trade constitutes using a firearm. In this case, Stewart bartered *for* a firearm, he did not barter *with* a firearm like the *Smith* defendant. *See United States v. Ulloa,* 94 F.3d 949, 958 (5th Cir.1996) (Politz, J., dissenting). Accordingly, neither *Bailey* nor *Smith* foreclose Stewart's claim, and, read together, those decisions foreclose the possibility that *Harris* is still viable.

As the Government correctly notes, the *Bailey* Court did list "bartering" as an example of an activity that "fall[s] within 'active employment.'" 516 U.S. at 148, 116 S.Ct. 501. But that language by the Supreme Court must be taken in context. The Supreme Court included "bartering" in a list of examples of active employments that might fall within the § 924(c)(1) definitions of "use." The Supreme Court did not purport to be encompassing every possible situation involving barter as a violation of that statute. Significantly, that discussion followed the Court's analysis of *Smith,* in which the defendant's use of a firearm had been the trading of it for drugs. In context, therefore, the Supreme Court's understanding of Congress's intent to afford the term "use" its "active connotation," *id.* at 148, includes situations in which a defendant barters a firearm in return for drugs. The Supreme Court's inclusion of the word "bartering" in the list of active uses implies no more than that. It does not compel a conclusion that a person who barters drugs to acquire a firearm has used the firearm, as opposed to using the drugs. As we explained above, a person who receives a gun has not actively employed the gun—that is, he has not "used" it within any ordinary understanding of the word "use."

The Government next argues that the reasoning in *Warwick* and *Westmoreland* is unpersuasive because those cases presented "very different factual situations" than the one before us. Appellee's Br. at 17. The Government suggests that both cases turned on conclusions that the defendants merely acquiesced to receiving guns as payment for drugs. *See id.* (citing *Warwick,* 167 F.3d at 975–76, and *Westmoreland,* 122 F.3d at 435–36). In contrast, the Government claims that Stewart initiated and negotiated the exchange of drugs for guns. We do not understand why this supposed factual distinction should affect the purely legal question presented in this case. It does not matter whether a drug dealer initiates a drugs-for-guns transaction or simply agrees to (and does) trade drugs for guns in lieu of money (or some other consideration). Under either scenario, the drug dealer has not used the gun within the meaning of § 924(c).

In any case, nothing in the record shows that Stewart or any of his co-conspirators initiated the idea of trading their drugs for guns. Indeed, the officers first injected guns into their discussions by stating that they were "running guns." The record reflects that Stewart wanted to obtain guns, but it only states that he and his co-conspirators asked to purchase the guns for money. While the defendants and the officers discussed "the gun transactions" and "finalized the transaction of guns for drugs," nothing in the record shows that the defendants asked to trade drugs for the guns. Certainly, the defendants agreed to such a transaction, but there is no more evidence that they initiated the exchange of drugs (as opposed to money) for guns than there was in *Westmoreland* or *Warwick.*

■ Finally, the Government argues that even under the interpretation of "use" we adopt today Stewart's conviction should be upheld because he pleaded guilty to *conspiring* to violate § 924(c)(1). In other words, the Government believes that Stew-

art acknowledged he conspired to use a gun in relation to a later drug trafficking crime. To buttress this belief, the Government cites Stewart's plea colloquy, during which the prosecutor claimed that the Government could have proven that Stewart "conspired to obtain firearms to use and carry them during and in relation to a drug trafficking offense." Yet, the Government proffered no facts to support a conviction on this ground. *See In re Sealed Case,* 153 F.3d 759, 771 (D.C.Cir. 1998). Furthermore, the signed plea agreement does not allude to such a theory. Instead, it merely states that Stewart engaged in a "Conspiracy to Obtain One or More Firearms During and in Relation to a Drug Trafficking Crime."

## III. CONCLUSION

Although our discussion makes clear that a person who receives a gun in exchange for drugs is not using the gun under § 924(c), we must remand this case to the district court to afford Stewart an opportunity to establish that his procedural default should be excused. As the district court properly recognized, Stewart's default is excused if he can demonstrate cause and prejudice, or his actual innocence. *See Bousley,* 523 U.S. at 622, 118 S.Ct. 1604. " 'Actual innocence' means factual innocence"; it does not mean "mere legal insufficiency." *Id.* at 623, 118 S.Ct. 1604. Accordingly, to establish actual innocence, Stewart must demonstrate

that " 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.' " *Id.* at 623, 118 S.Ct. 1604 (quoting *Schlup v. Delo,* 513 U.S. 298, 327–28, 115 S.Ct. 851, 130 L.Ed.2d 808 (1995) (internal quotation omitted)).

In *Bousley,* a case whose procedural posture is substantially similar to the one now before us, the Supreme Court provided explicit instructions for how a case such as this one should proceed on remand:

[T]he Government is not limited to the existing record to rebut any showing that the petitioner might make. Rather, on remand, the Government should be permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy and would not normally have been offered before [the Court's] decision in *Bailey.* In cases where the Government has forgone more serious charges in the course of plea bargaining, petitioner's showing of actual innocence must also extend to those charges.

*Id.* at 624 (footnote omitted). For the reasons stated above, the district court's judgment is reversed, and the case is remanded for further proceedings consistent with this decision.